IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:13-CR-10 |
| ) | (REEVES/SHIRLEY) |
| CLIFFORD LEON HOUSTON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case was before the Court on April 16, 2013, for a motion hearing on the Defendant's Motions to Dismiss the Indictment [Docs. 23, 60], filed on February 14, 2013, and March 22, 2013, respectively, and his Motions to Dismiss [the] Criminal Complaint [Docs. 44, 55, 59, 66, 67, 68, 69], which were all filed on March 22, 2013.[1] Assistant United States Attorney David C. Jennings appeared on behalf of the Government. The Defendant proceeded *pro se* with the assistance of elbow counsel Charles I. Poole.[2] The Court heard the parties' arguments and took the matters under advisement.

---

[1] On March 27, 2013, five days after the motion-filing deadline, the Defendant filed several motions [Docs. 44-1, 55-1, 59-1, 60-1, 66-1, 67-1, 68-1, 69-1], which are identical to motions previously filed. The clerk entered the March 27 motions as attachments to their corresponding motions, and the Court will treat them as such.

[2] The Defendant was initially represented by court-appointed counsel. On March 4, 2013, the Defendant asked to represent himself with the assistance of elbow counsel. The Court advised the Defendant of the risks and perils of representing himself using the litany provided in United States v. McDowell, 814 F.3d 245, 251 (6th Cir. 1987). Despite the Court's advice, the Defendant chose and the Court permitted [Doc. 37] the Defendant to represent himself. The Court appointed [Doc. 38] Attorney Charles I. Poole to serve as elbow counsel. At the April 16 hearing, the Court again offered to appoint counsel for the Defendant, but the Defendant stated that he wanted to continue to represent himself at this time.

# I. POSITIONS OF THE PARTIES

At the time he filed the instant motions, the Defendant was charged in an Indictment [Doc. 6] with possessing a firearm while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). On May 7, 2013, the Government filed a Superseding Indictment [Doc. 92], which added forfeiture allegations and Count Two. Count Two of the Superseding Indictment alleges that the Defendant knowingly and willfully communicated to Pat Honeycutt via telephone, threats to kill James F. Logan, Jr., an attorney practicing in the Eastern District of Tennessee, in violation of 18 U.S.C. § 875(c). He brings nine motions requesting that the Court dismiss the Indictment and the Criminal Complaint. The Defendant makes the following arguments: (1) his arraignment was not timely; (2) certain people have a conflict of interest in his criminal matter and are engaged in a conspiracy against him; (3) the undersigned was not a neutral and detached magistrate judge at the time the undersigned signed the Criminal Complaint; (4) AUSA Jennings has engaged in prosecutorial misconduct and is a material witness in the instant criminal matter; and (5) the Defendant was illegally seized.

The Government responds [Doc. 76] that the Defendant's arraignment was not delayed and that based upon the chronology of events, the Defendant's due process rights were not violated. In addition, it argues that the Defendant has not demonstrated a conflict of interest with regard to any individual and that his arguments in this regard are frivolous. It also contends that the Defendant has failed to demonstrate that AUSA Jennings has engaged in prosecutorial misconduct or that he is a witness in this case. Finally, the Government argues that officers had probable cause to seize the Defendant.

2

## II. SUMMARY OF THE TESTIMONY

The Government presented the testimony of Special Agent Jason Dobbs with the Bureau of Alcohol, Tobacco, and Firearms ("ATF").[3] Agent Dobbs stated that he has been an ATF agent for approximately five years. The ATF began investigating the Defendant's brother, Rocky Houston, in 2012 for being a felon in possession of a firearm. Agent Dobbs testified that on October 9, 2012, a camera was placed on a utility pole near Rocky Houston's home. At this time, agents did not have a search warrant to place the camera on the utility pole. Agent Dobbs testified that he later sought a search warrant on December 19, 2012, when the Sixth Circuit issued its decision in United States v. Anderson-Bagshaw, No. 12-3074, 2012 WL 6600331 (6th Cir. Dec. 19, 2012). Evidence collected from the camera from October to December 2012 showed Rocky Houston in possession of firearms. Agent Dobbs testified that on January 11, 2013, at approximately 6:00 p.m., he, with help from the Roane County Sheriff's Department, executed an arrest warrant for Rocky Houston at a bank in Roane County, Tennessee.

Agent Dobbs stated that several hours later around 8:00 p.m., he and AUSA Jennings sought search warrants for property belonging to the Houston family. During this time, agents went to Rocky Houston's property in anticipation of the search warrants. Upon arrival, they performed a protective sweep. After the agents entered Rocky Houston's property, the Defendant approached them from his residence riding a four-wheeler. The Defendant had three guns on his four-wheeler or on his person. He was removed from his four-wheeler without incident.

---

[3] The following summary of the testimony contains only that testimony that is relevant for purposes of this Report and Recommendation. A more detailed summary of Agent Dobbs's testimony is related in the Report and Recommendation on the Defendant's suppression motions.

3

Agent Dobbs testified that the search warrants were obtained around 8:30 p.m. After Agent Dobbs received the search warrants, he traveled from Knoxville, Tennessee, to Roane County, Tennessee, to help with the execution of the search warrants. It took Agent Dobbs approximately forty-five minutes to reach the scene. When he arrived at the scene, the Defendant was talking to an ATF agent. The agent had already advised the Defendant of his Miranda rights, and the Defendant had agreed to talk to the agent. The Defendant admitted that he had been "getting high" and drunk and made a reference to "wacky tobacco." Agent Dobbs was not present when the Defendant made these statements. Later, Agent Dobbs went into the Defendant's house and smelled a strong odor of marijuana and found marijuana residue.

### III. ANALYSIS

As an initial matter, the Court observes that the Defendant has filed seven motions to dismiss his Criminal Complaint. "In felony and other cases where an indictment or information is filed, the complaint is the temporary charging document, and is superseded once the more formal charging document is filed." 1 Charles Alan Wright et al., Federal Practice and Procedure § 41 (4th ed.). Here, the Indictment is the charging instrument. The Defendant's Criminal Complaint was superseded by the Indictment. Therefore, his arguments regarding the dismissal of the Criminal Complaint are technically moot. The Court, however, notes that the Defendant is proceeding *pro se*, and a *pro se* defendant is held to less stringent standards than that of an attorney. See United States v. McKinney, 375 F. App'x 479, 481 (6th Cir. 2010) ("We do not require a *pro se* party to meet the same standards in the presentation of his argument as we apply to attorneys."). Accordingly, the Court will treat all of the Defendant's motions as motions to dismiss the Indictment.

4

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "fully, directed, and expressly[.]" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487 (1888)); Landham, 251 F.3d at 1079. With these principles in mind, the Court examines the Defendant's arguments for the dismissal of the Indictment.

### A. Sufficiency of Indictment

The Defendant makes several different arguments as to why the Indictment should be dismissed, but none of his arguments provide a basis for dismissing the Indictment. The Supreme Court has held that "[a]n indictment returned by a legally constituted and unbiased grant jury . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." Costello v. United States, 350 U.S. 359, 363 (1956). As mentioned above, several of the Defendant's arguments assert that certain people have a conflict of interest with his case. However, the grand jury issues an indictment based upon a finding of probable

5

cause, not the people that allegedly have a conflict of interest. See Fed. R. Crim. P. 6. In addition, the Defendant makes several arguments that the evidence against him is invalid. This also is not a basis to dismiss the Indictment. See Costello, 350 U.S. at 363-64 (finding that indictments cannot be challenged upon the ground that they are not supported by adequate or competent evidence).

The Defendant does not argue that the Indictment is legally or procedurally insufficient, and the Court finds that it is not. See United States v. Overmyer, 899 F.2d 457, 465 (6th Cir. 1990) (noting the "well-accepted principle that grand jury indictments are presumed valid"). As mentioned above, an indictment is sufficient as long as it fairly informs a defendant of the crimes charged and protects the defendant against double jeopardy. In the present matter, the Defendant is charged with one count of possessing a firearm while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3).[4] The date when the crime allegedly occurred is provided and the language tracks the language of the statute that the Defendant allegedly violated. The Court finds that the Indictment provides the Defendant with notice of the statute that he allegedly violated and protects him from double jeopardy. Count One of the Indictment is constitutionally sound. Accordingly, the Court finds that the Defendant has not alleged any basis to dismiss Count One and recommends that his Motions to Dismiss [Docs. 23, 44, 55, 59, 60, 66, 67, 68, 69] be denied.

Although the Defendant's arguments are not a basis to dismiss the Indictment, the Court will nevertheless address them in the following order: (1) timeliness of the Criminal Complaint

---

[4] Count Two of the Superseding Indictment charges the Defendant with knowingly and willfully communicating to Pat Honeycutt via telephone his threats to kill Attorney James F. Logan, Jr., in violation of 18 U.S.C § 875(c). Only Count One was alleged at the time the Defendant filed the instant motions. The Defendant has been given time to file additional motions relating to Count Two, so Count Two is not addressed in this Report and Recommendation.

and prompt presentment; (2) conflicts of interest and other various conclusory allegations; (3) neutral and detached magistrate judge; (4) prosecutorial misconduct; and (5) the Defendant's alleged illegal seizure.

### B. Timeliness of the Criminal Complaint and Prompt Presentment

Citing to McNabb v. United States, 318 U.S. 322 (1943), the Defendant asserts [Doc. 66] that the Indictment should be dismissed because his arraignment was untimely. The Government responds [Doc. 76] that the Defendant's Criminal Complaint was issued less than forty-eight hours from the time of his arrest, and therefore, his due process rights were not violated. It asserts that the Defendant was arrested on the evening of January 11, 2013, and was taken before a magistrate judge for an Initial Appearance on the following Monday, January 14, 2013. The Government cites Gerstein v. Pugh, 420 U.S. 103 (1975) and County of Riverside v. McLaughlin, 500 U.S. 44 (1991), to support its argument.

The Government's response is geared toward whether the Defendant was unreasonably held without a proper determination of probable cause, i.e., whether there was a McLaughlin violation. The Defendant argues that he was interrogated without having been timely arraigned, which would be a violation of the McNabb-Mallory rule.[5] The Court will first address whether a McLaughlin violation occurred, and then it will analyze whether the Defendant was promptly presented to a magistrate judge.

---

[5] As already mentioned, the Defendant's argument is not a basis to dismiss the Indictment. See Corely v. United States, 556 U.S. 303, 306 (2009) (explaining that the McNabb-Mallory rule may warrant the suppression of a person's confession if given after an unreasonable delay in bringing him or her before a judge). The Court also notes, however, that a violation of McLaughlin is not a basis to dismiss the Indictment either. See United States v. Terrell, 482 F. App'x 161, 165 (6th Cir. 2012) (stating that the defendant's remedy for an alleged McLaughlin violation is to file a Bivens claim, "not dismissal of the indictment").

7

*(1) Determination of Probable Cause*

As mentioned above, the Government argues that the Defendant's due process rights were not violated when he was arrested without a warrant. It asserts that less than forty-eight hours had passed between the time the Defendant was arrested and when the Criminal Complaint was signed.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. Const. IV amend. In Gerstein, the United States Supreme Court found that the Fourth Amendment permits warrantless arrests as long as a judicial determination of probable cause was promptly established thereafter. 420 U.S. at 114; see also McLaughlin, 500 U.S. at 55 (stating that the "Fourth Amendment permits a reasonable postponement of a probable cause determination"). In McLaughlin, the Court concluded that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." McLaughlin, 500 U.S. at 56. The Sixth Circuit has endorsed McLaughlin's forty-eight hour rule. Peet v. City of Detroit, 502 F.3d 557, 569 (6th Cir. 2007). In addition, the Sixth Circuit has stated that "[w]hile a delay over 48 hours is not per se unlawful, the Government bears the burden in such cases to 'demonstrate the existence of a bona fide emergency or other extraordinary circumstance' that led to the delayed probable cause determination." Cherrington v. Skeeter, 344 F.3d 631, 643 (6th Cir. 2003) (quoting McLaughlin, 500 U.S. at 517).

Although the Court is unsure as to the exact time that the Defendant was formally arrested,[6] it is undisputed that he was taken into police custody after 8:00 p.m. on January 11,

---

[6] Agent Dobbs testified that agents began the protective sweep at approximately 8:00 p.m. When agents entered Rocky Houston's property, the Defendant approached them on his four-wheeler. The agents removed the Defendant

8

2013, without an arrest warrant. The following day on January 12, 2013, a Criminal Complaint [Doc. 1] was signed. Accordingly, the Court finds that a judicial determination of probable cause was made within the parameters articulated in Gerstein and McLaughlin.

*(2) Prompt Presentment*

The Defendant asserts that his due process rights were violated pursuant to McNabb when he was interrogated without being promptly arraigned.

At common-law, prompt presentment[7] required an officer to take an arrested person before a magistrate judge "as soon as he reasonably could." Corely v. United States, 556 U.S. 303, 307 (2009). Federal Rule of Criminal Procedure 5(a) codified this requirement and provides that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . unless a statute provides otherwise." In McNabb, the Supreme Court announced that confessions taken in violation of the prompt presentment requirement would be excluded. 318 U.S. at 346-47. This holding was later upheld in Mallory v. United States, 354 U.S. 449 (1957), and thereafter became known as the McNabb-Mallory rule—"an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge." Corley, 556 U.S. at 306; see also United States v. McDowell, 687 F.3d 904, 908 (7th Cir. 2012).

---

from his four-wheeler, and he was read his Miranda rights. The officers then took the Defendant to Rocky Houston's carport.

[7] "[P]resentment is the point at which the judge is required to take several steps to foreclose Government overreaching: informing the defendant of the charges against him, his right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant the chance to consult with counsel; and deciding between detention or release." Corley v. United States, 556 U.S. 303, 320 (2009) (citing Fed. R. Crim. P. 5(d)).

9

Subsequently, Congress passed 18 U.S.C. § 3501. Section 3501(c), which focuses on the McNabb-Mallory rule, provides, in relevant part:

> [A] confession made or given by a person . . . while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such a person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention.

As the Seventh Circuit explained, "Subsection (c) thus provides a six-hour 'safe harbor' for confessions given before presentment: A confession given within six hours of arrest is admissible notwithstanding a delay in presentment if the judge finds it was voluntary." McDowell, 687 F.3d at 909. In the present matter, the only statement that was presented at the April 16 hearing was that the Defendant admitted to "getting high" and drunk and that he made a reference to "wacky tobacco." Therefore, this is the only statement that the Court will analyze.

The Defendant appeared before the Court on a Criminal Complaint [Doc. 1] on January 14, 2013, three days after he was arrested. Shortly after 8:00 p.m. on January 11, 2013, agents began a protective sweep on Rocky Houston's property. When agents entered the property, the Defendant approached them from his adjacent property on a four-wheeler with three guns. The Defendant was detained without incident. The Defendant was given his Miranda rights and agreed to talk to an ATF agent. While talking to the agent, the Defendant admitted that he had been "getting high" and drunk, and he made a reference to "wacky tobacco."

10

During this time, Agent Dobbs was seeking a search warrant for the residences of the Houston property. The search warrants were signed at 8:26 p.m., 8:30 p.m., and 8:33 p.m.[8] After receiving the search warrants, Agent Dobbs traveled to the property from Knoxville, Tennessee, and he arrived at the scene approximately forty-five minutes later.

In the instant matter, the Court finds that the Defendant's incriminating statements were voluntary given and occurred well-within the six hour period provided in 18 U.S.C. § 3501(c). He agreed to talk to an agent after his Miranda rights were given.[9] In addition, he made the incriminating statements within approximately an hour and fifteen minutes of being detained. The weight given to his statements are within the province of the jury. See 18 U.S.C. § 3501(c). The Court also finds that Agent Dobbs's testimony was credible and not impeached by the Defendant. Accordingly, the Court finds that the incriminating statement was voluntary and within the safe harbor provided in 18 U.S.C. § 3501(c).

### C. Conflicts of Interest and Various Conclusory Allegations

The Defendant asserts that United States Magistrate Judge H. Bruce Guyton had a conflict of interest when he signed a search warrant and that United States Attorney William C. Killian has a conflict of interest in prosecuting the Defendant's case. In addition, the Defendant makes various conclusory allegations against the prosecutors and federal judges. The Court will briefly address the Defendant's arguments.

---

[8] The search warrants are attached as exhibits [15-1, 15-2, 15-3] to the Defendant's Motion to Suppress [Doc. 15].
[9] The Defendant does not argue that his statements were involuntary. Nevertheless, the Court has no evidence that his statements were the product of police coercion. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) (observing that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment"); McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988) (holding that "[i]f the police misconduct at issue was not the 'crucial motivating factor' behind petitioner's decision to confess, the confession may not be suppressed").

*(1) United States Magistrate Judge H. Bruce Guyton*

The Defendant argues [Doc. 23] that Judge Guyton was in conflict of interest pursuant to 28 U.S.C. § 455(a) when he signed a search warrant on December 19, 2012.[10] He asserts that the conflict of interest arises because Judge Guyton recused himself in a previous civil lawsuit, Clifford Leon Houston v. James F. Logan, Jr., et al., 3:12-mc-02, that the Defendant filed against a number of people, including Judge Guyton. The Defendant seems to argue that once a judge recuses in a case, he or she has a conflict of interest in any subsequent cases or matters involve the same party that come before such judge.[11]

"[A] judge is presumed to be impartial, and the party seeking disqualification 'bears the substantial burden of proving otherwise.'" Scott v. Metro. Health Corp., 234 F. App'x 341, 352 (6th Cir. 2007) (quoting United States v. Denton, 434 F.3d 1104, 1111 (8th Cir. 2006)). Pursuant to 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In addition, § 455(b)(1) provides that a judge shall also disqualify himself "[w]here he has a personal bias or prejudice concerning a party." The test for recusal is whether "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." United States v. Tolbert, 459 F. App'x 541, 545 (6th Cir. 2012) (quoting United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990)). "When

---

[10] To the extent that the Defendant argues that Judge Guyton was not a neutral and detached magistrate judge when he signed the search warrant, the Court will address that issue in a subsequent Report and Recommendation.

[11] The Court observes that the search warrant that the Defendant is referring to pertains to the continued use of a pole camera in order to monitor the Defendant's brother's actions. "To establish standing to challenge the search warrant, [the defendant] must show that the warrant violated [his or her] personal rights." Martinez v. Nygaard, 831 F.2d 822, 825 (9th Cir. 1987). "To make this showing, [a person] must prove [he or she] had a legitimate expectation of privacy in the area searched or the things seized." Id.; see also United States v. Wiley, 847 F.2d 480, 481 (8th Cir. 1988). Although Rocky Houston was the target of the investigation, the Court finds that the Defendant has standing to challenge the search warrant because it allowed agents to also monitor the Defendant's house located at 391 Barnard Narrows Road, Ten Mile, Tennessee.

12

a party cannot show partiality stemming from an extra-judicial source or personal bias, recusal is only necessary in rare circumstances." Id. As the Sixth Circuit explained:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Id. (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). "Section 455 is designed 'to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.'" Scott, 234 F. App'x at 354 (quoting Union Planters Bank v. L & J Dev. Co., 115 F.3d 378, 383 (6th Cir. 1997)).

A judge's recusal in a prior case does not alone require disqualification in a subsequent case. See Communities for Equity v. Mich. High School Athletic Ass'n, 459 F.3d 676, 698 (6th Cir. 2006) (citing Person v. Gen. Motors Corp., 730 F. Supp. 516, 518-19 (W.D.N.Y. 1990)); see also U.S. v. Partin, 312 F. Supp. 1355, 1358 (E.D. La. 1970) (observing that "[t]he fact that the Court felt that the ends of justice would best be served by recusation in that particular case can, of course, have no bearing on the Court's refusal to recuse itself in the present instance. The present case involves only this one defendant, and it involves an entirely different charge . . . ."). The Sixth Circuit has applied this holding to the Defendant in Clifford Leon Houston v. Wicks, No. 11-6557, 2012 WL 5259166, at *1 (6th Cir. Oct. 25, 2012) (holding that Leon Houston's "conclusory assertions of bias [relating to a judge's recusal in an earlier case] are not based on extrajudicial activity").

In the present matter, the Court finds that Judge Guyton's recusal in a previous civil matter does not mean that he could not later sign a search warrant in or preside over the Defendant's subsequent criminal case. Moreover, the prior civil lawsuit has absolutely nothing to

13

do with the Defendant's instant charges.[12] Accordingly, the Court finds that a reasonable person would not question Judge Guyton's impartiality because he recused in the Defendant's previous civil lawsuit.

### (2) United States Attorney William C. Killian

The Defendant asserts [Doc. 60] that United States Attorney William Killian has a conflict of interest in the present matter because the Defendant filed a lawsuit against him, along with a number of others, in Clifford Leon Houston v. Stacia Hilton, et al., 3:12-mc-08.

The Court notes that the Defendant's lawsuit against Untied States Attorney Killian was dismissed because the Defendant did not pay the filing fee or file an application to proceed *in forma pauperis*. In addition, the Court notes that the Defendant has previously raised a similar argument,[13] in which the Court denied in a Memorandum and Order [Doc. 88]. The Court finds that the same analysis applies. If the Defendant's argument was true, any defendant could simply file a lawsuit against the prosecuting attorney and escape prosecution. The Court again finds that the Defendant's argument is without any legal support.

### (3) Defendant's Conclusory Allegations

The Defendant [Doc. 55] asserts that United States Chief District Judge Varlan, Judge Guyton, United States Attorney William Killian, AUSA Jennings, and the undersigned, have engaged in a conspiracy to commit hate crimes against him and his brother, Rocky Houston, and that all of these individuals have conflicts of interest with the Defendant's criminal matter. In

---

[12] The civil lawsuit involved allegations of "conspiracy to interfere with civil rights"; "providing material support to terrorist[s]"; terrorism; and so forth. It has nothing to do with the present Superseding Indictment.
[13] The only difference between the Defendant's previous argument and the instant matter before the Court is the type of relief the Defendant is requesting. In his previous argument, the Defendant asserted that United States Attorney William Killian should recuse. Here, the Defendant seeks to dismiss his case.

14

addition, the Defendant argues [Doc. 68] that Special Agent Jason Dobbs, United States Attorney William Killian, AUSA Jennings, Judge Guyton, and the undersigned, have agreed to deny the Defendant his due process rights, equal protection of the law, the right to a fair and impartial trial, and the right against cruel and unusual punishment.

The Court finds that the Defendant has no factual support for these conclusory allegations. In addition, with regard to the allegations against Judge Varlan, Judge Varlan is no longer assigned to this case[14] and has no involvement whatsoever in the Defendant's criminal matter. Accordingly, these contentions are denied as unavailing, frivolous, and baseless.

### D. United States Magistrate Judge C. Clifford Shirley, Jr.

The Defendant argues [Doc. 59] that the undersigned was not a neutral and detached magistrate judge when I signed the Defendant's Criminal Complaint because I had a conflict of interest. The Defendant states that the undersigned has a conflict of interest because he sued me, along with a number of other people, in Clifford L. Houston v. John Ashcroft et al., 3:03-cv-127. Although the Defendant combines the neutral and detached argument with his conflict of interest argument, the Court will address each of them separately.

#### (1) Neutral and Detached Magistrate Judge

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In Shadwick v. City of Tampa, the Supreme Court stated that an issuing magistrate judge must meet two tests: (1) he or she "must

---

[14] On March 15, 2013, the Defendant's case was reassigned [Doc. 39] to United States District Judge Danny C. Reeves.

15

be neutral and detached," and (2) "must be capable of determining whether probable cause exists for the requested arrest . . . ." 407 U.S. 345, 350 (1972); see also United States v. Master, 614 F.3d 236, 240 (6th Cir. 2010) (applying Shadwick's two tests). The Supreme Court explained that "[w]hatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from the activities of law enforcement." Id. at 351. The Defendant challenges only the first test, arguing that the undersigned was not a neutral and detached magistrate judge.

The Defendant argues that the undersigned was not a neutral and detached magistrate judge when I signed the Criminal Complaint because the Defendant had previously sued me. However, this is not a basis to find that a judge lacks neutrality or detachment. The standard looks at whether a magistrate judge acted separately from police and prosecutors. Id. The Defendant does not assert, nor does the Court find, that the undersigned engaged in law enforcement activities. Accordingly, the Court finds that the undersigned was a neutral and detached magistrate judge when I signed the Criminal Complaint.[15]

*(2) Conflict of Interest*

As mentioned above, the Defendant also argues that the undersigned has a conflict of interest because the Defendant sued me in Clifford L. Houston v. John Ashcroft et al., 3:03-cv-127. The Court notes, however, that "[r]ecusal is not required simply because one of the parties has initiated litigation against the presiding judge." Callihan v. Eastern Ky. Prod. Credit Ass'n,

---

[15] The Court also notes that even if the undersigned was not a neutral or detached magistrate judge when the Criminal Complaint was signed, it would be of no consequence because the Criminal Complaint was superseded by the Indictment, in which the grand jury, not the undersigned, found probable cause that the Defendant violated 18 U.S.C. § 922(g)(3).

16

No. 89-5578, 1990 WL 12186, at *2 (6th Cir. Feb. 13, 1990) (citing United States v. Studley, 783 F.2d 934, 939-40 (9th Cir. 1986)). In fact, numerous courts have held that filing a lawsuit against a judge is not sufficient to establish partiality under § 455(a). See In re Trader, 419 F. App'x 170, 170-71 (3d Cir. 2011) (denying petitioner's argument that the judge should recuse because the petitioner named the judge as a defendant in a civil rights lawsuit, noting that it would encourage litigants to "improperly judge shop"); Studley, 783 F.2d at 940 (stating that "[a] judge is not disqualified by a litigant's suit or threatened suit against him"); United States v. Grismore, 564 F.2d 929, 933 (10th Cir. 1977) (noting that "[a] judge is not disqualified merely because a litigant sues or threatens to sue him"); Marshall v. Yates, No. 3:06-cv-611, 2007 WL 471166, at *1 (W.D. Ky. Feb. 7, 2007) (stating that "[t]he mere fact that this judge may be one of the numerous federal judges that [p]laintiff has filed against is not sufficient to establish that his recusal from this case is warranted") (other citations omitted). As explained by the Seventh Circuit:

> There is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties. One reason for this policy is that a per se rule of disqualification would allow litigants to judge shop by filing a suit against the presiding judge. And even if litigation against a judge is not for the purpose of disqualification, recusal is not automatic because suits against public officials are common and a judge would likely not harbor bias against someone simply because the person named him in a meritless civil suit.

In re Taylor, 417 F.3d 649, 652 (7th Cir. 2005).

As explained above and in a previous Memorandum and Order,[16] a judge is not disqualified simply because a defendant files or has filed a lawsuit against him or her. In

---

[16] The Court analyzed this issue in a Memorandum Order [Doc. 88], filed on April 24, 2013, with regard to the Defendant's motion to recuse the undersigned.

17

addition, the lawsuit that was filed against the undersigned and numerous others, Clifford L. Houston v. John Ashcroft et al., 3:03-cv-127, was dismissed by the Sixth Circuit and has nothing to do with the present Indictment.[17]

### E. Prosecutorial Misconduct

The Defendant argues [Doc. 67] that AUSA Jennings has engaged in prosecutorial misconduct because he was involved in the search of the Defendant's home and that the Defendant will be subpoenaing AUSA Jennings to testify "to the warrantless and illegal instal[l]ation of [the] telephone pole cameras." The Government responds [Doc. 76] that AUSA Jennings was at the scene for legal guidance.

The Defendant has no factual support that AUSA Jennings has engaged in prosecutorial misconduct. In addition, he has not shown that AUSA Jennings is a material witness in his case. Federal Rule of Criminal Procedure 17(b), in relevant part, provides that "the court must order that a subpoena be issued for a named witness" if the defendant shows "the necessity of the witness's presence for an adequate defense." Although the Defendant has moved the Court to issue subpoenas, the Defendant has not yet complied with Rule 17(b). Accordingly, the Defendant's motion is denied.

### F. Illegal Seizure

In two motions [Docs. 44, 69], the Defendant argues that the dismissal of the Indictment is warranted because he was seized without probable cause and that the agents who arrested him

---

[17] The Defendant's motion states that he sued the undersigned for "conspiracy to secure insurance fraud and civil rights violations[,] and due process violations." Court records show that the Defendant's allegations stem from a 1994 automobile accident. See Clifford Houston v. John Ashcroft, et al., 3:03-cv-127.

18

Case 3:13-cr-00010-PLR-CCS   Document 116   Filed 06/13/13   Page 18 of 19   PageID #: 996

should have obtained an arrest warrant. With regard to whether the officers should have obtained an arrest warrant before arresting the Defendant, the Court has already explained that the "Fourth Amendment permits a reasonable postponement of a probable cause determination." McLaughlin, 500 U.S. at 55. In addition, the Court has found that a judicial determination of probable cause was promptly established after his arrest.[18] To the extent that these motions challenge the Defendant's stop and seizure, the Court will address the Defendant's argument in another Report and Recommendation relating to the suppression of evidence at trial. Accordingly, the Court finds that the Defendant's motions are not-well taken and should be denied.

### IV. CONCLUSION

After carefully considering the parties' filings and arguments, the Court finds that there is no basis to dismiss the charges. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motions to Dismiss [**Docs. 23, 44, 55, 59, 60, 66, 67, 68, 69**] be **DENIED**.[19]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[18] See Part III, B(1).

[19] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).