UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
(at Knoxville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3: 13-10-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CLIFFORD LEON HOUSTON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is currently pending for consideration of Defendant Clifford Leon Houston's six motions to suppress evidence obtained from the warrantless surveillance of his property with a video pole camera, the January 11, 2013 search of his residence, and the seizure of his person on the same day. [Record Nos. 14, 16, 18, 20, 47, 57, 58] These motions were referred to United States Magistrate Judge C. Clifford Shirley, Jr., pursuant to 28 U.S.C. § 636(b). On April 16, 2013, Magistrate Judge Shirley conducted a hearing on these motions. Assistant United States Attorney David C. Jennings appeared on behalf of the United States and the defendant proceeded *pro se* with the assistance of elbow counsel Charles I. Poole.

On June 13, 2013, the magistrate judge issued a report, recommending that the Court deny the various motions to suppress. [Record No. 117] On July 2, 2013, the defendant filed a notice, which the Court will construe as objections to the magistrate judge's report. [Record No. 129] After reviewing this matter, the Court will deny the defendant's various motions to suppress.

-1-

## I.

This cases arises from law enforcement's investigation of the defendant's brother Rocky Joe Houston. After receiving information that Rocky Joe Houston, a convicted felon, was in possession of firearms, agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") began their investigation. As part of the investigation, on October 9, 2012, a video camera was installed on a utility pole adjacent to the Houston family property. On December 19, 2012, law enforcement obtained authorization for the continued use of the pole camera. Based upon evidence collected throughout law enforcement's investigation of Rocky Joe Houston, on January 11, 2013, ATF agents obtained search warrants for the defendant's residence (391 Barnard Narrows Road), Rocky Joe Houston's primary residence (373 Barnard Narrows Road), and Rocky Joe Houston's daughter's residence (412 Barnard Narrows Road). While these search warrants were being executed, law enforcement encountered Defendant Clifford Leon Houston. The events which followed led to his arrest for being in possession of firearms while an unlawful user of a controlled substance.

At a January 17, 2013 hearing before Magistrate Judge Shirley, Roane County Sheriff's Investigator Jason Mynatt testified regarding the underlying investigation of Rocky Joe Houston for being a convicted felon in possession of a firearm.[1] [Record No. 12, pp. 10-71] Mynatt also testified regarding the installation, use, and monitoring of the video camera installed on the utility pole adjacent to the defendant's property. Specifically, Investigator Mynatt testified that he was monitoring the pole camera for safety purposes the night the defendant was taken into

---

1 The defendant was represented by attorney Joseph A. Fanduzz at the January 17, 2013 hearing. Mr. Fanduzz later withdrew as counsel at the request of the defendant. [Record No. 38]

custody (January 11, 2012). He observed the defendant drive toward Rocky Joe Houston's residence on an All Terrain Vehicle ("ATV") at a rapid pace, at which time law enforcement drew their weapons and ordered the defendant off the vehicle. [*Id.*, pp. 31-32] Mynatt testified that he observed that the defendant was armed with several guns at this time. [*Id.*] Additionally, he testified about the subsequent questioning of the defendant and the search of his residence. According to Mynatt, the defendant admitted that he had been smoking marijuana and drinking alcohol the night he was taken into custody. [*Id.*, pp. 70-71] He also testified that the defendant appeared to be under the influence of intoxicants when Mynatt arrived at the Houston family property the night of January 11, 2012. [*Id.*]

ATF Special Agent Jason Dobbs testified at the April 16, 2013, motion hearing. [Record No. 97] Special Agent Dobbs stated that, in 2012, the ATF began investigating the defendant's brother Rocky Joe Houston for being a felon in possession of a firearm. As part of this investigation, a camera was placed on a utility pole near Rocky Joe Houston's residence from October 2012 to December 2012. Evidence collected from this camera revealed that Rocky Joe Houston was in possession of firearms. Special Agent Dobbs also testified regarding the functional capabilities of the pole camera and how law enforcement used the camera. He stated that the areas captured by the camera were readily viewable from public roads surrounding the property. Special Agent Dobbs recollected the application, issuance, execution of the various search warrants obtained in furtherance of law enforcement's investigation into Rocky Joe Houston, as well as the events surrounding the defendant's arrest.

Based upon evidence presented at the January 17, 2013 and April 16, 2013 hearings, the

magistrate judge made the following findings:

In 2012, the ATF and the Roane County Sheriff's Department began an investigation into the alleged possession of firearms by the Defendant's brother Rocky Houston, whom they knew to be a convicted felon. On October 9, 2012, the ATF engaged Volunteer Electric utility company to install a video camera on a public utility pole on Dogtown Road in Ten Mile, Tennessee. The pole camera, which was located directly across Dogtown Road from the residence of Ray and Juanita Johnson, had a view of the rear of the Defendant's mobile home residence, his back yard, the pasture and fields surrounding his residence, and the rear of Rocky Houston's residence. In addition to recording, the camera was monitored by law enforcement agents remotely through an internet connection primarily during the daytime. The camera was monitored on a few occasions at night. The monitoring officers could cause the camera to pan and to zoom, although the focus was mostly maintained at what could be seen with the naked eye from Dogtown Road because additional magnification made the image blurry. The camera could not see into the Defendant's residence.

The pole camera was installed and monitored without a search warrant or other judicial authorization from October 9 to December 19, 2012. During this time, law enforcement observed the Defendant and Rocky Houston, via the camera, carrying and shooting firearms on the Defendant's property on numerous occasions. On December 19, 2012, ATF Agent Jason Dobbs sought a search warrant authorizing the continued use of the pole camera and provided an affidavit in support thereof. United States Magistrate Judge H. Bruce Guyton issued a search warrant authorizing the continued use of the pole camera on that same day. Following the issuance of this search warrant, law enforcement monitored the pole camera in the same manner as before the search warrant.

On January 11, 2013, ATF agents and Roane County deputies arrested Rocky Houston at the bank where his wife worked. Following this arrest, Agent Dobbs went to Knoxville, Tennessee, to obtain federal search warrants to search the three residences on the Houston family property. Law enforcement arrived at Rocky Houston's residence around 8:00 p.m. on January 11, 2013, in anticipation of executing a search warrant at the residence. Officers entered Rocky Houston's property and began to secure it. While engaged in this task, officers saw the Defendant get on a ATV by his residence and ride toward Rocky Houston's property at a rapid pace. The officers could see that the Defendant was armed and drew their weapons. They met the Defendant in the field between the Defendant's and Rocky Houston's residences and ordered him to stop. The

-4-

Defendant complied with this order. The officers detained the Defendant and handcuffed him. An agent advised the Defendant of the *Miranda* warnings, the Defendant agreed to talk with officers, and the officers removed the Defendant to Rocky Houston's carport. Before the search warrants were signed at around 8:30 p.m., agents on the scene called Agent Dobbs to advise him that the Defendant had been taken into custody. Sometime following his receipt of the Miranda warnings, the Defendant spoke with an ATF agent and made the statement that he had been "getting high and getting drunk" that evening.

When Agent Dobbs arrived at Rocky Houston's residence around 9:15 p.m. on January 11, 2013, the Defendant was still speaking with an ATF agent in Rocky Houston's carport. Investigator Mynatt arrived at the Houston property around that same time, which was approximately an hour after he saw, via the pole camera, the officers stop the Defendant. When Officer Mynatt arrived, the Defendant was still speaking with an agent and appeared to be intoxicated. Agent Dobbs, Investigator Mynatt, and other officers searched the Defendant's residence pursuant to a search warrant and seized marijuana residue, drug paraphernalia, and firearms.

[Record No. 117, pp. 13-16]

Defendant Clifford Leon Houston objects to the testimony and the magistrate judge's finding that he admitted to law enforcement that he had been high and drunk. [Record No. 129, p. 7] He contends that ATF Agent Steve Cordal asked him if had been smoking marijuana, and that he replied saying, "what whacky tobacco?" [*Id.*, p. 10] The defendant avers he "then asked the ATF agent if he smoked marijuana, and in his response ATF Agent Steve Cordal said he smoked pot before he became [an] agent." [*Id.*] He asserts that this is "nothing but a vicious and malic[i]ous lie manufactured by ATF agents to cover their unlawful conduct." [*Id.*] He also contends that this is a "conspiracy in furtherance of [a] conspiracy to block the defendant from reporting federal crimes being committed by state and federal official[s]" and is "domestic terrorism and treason." [*Id.*] The defendant contends that he did not approach law enforcement

-5-

at a "high rate of speed" on his ATV the night of January 11, 2013, and that he was not aware they were on the property until he was confronted.[2]  [*Id.*, p. 11]

On Saturday, January 12, 2013, a Criminal Complaint for the defendant was signed by Magistrate Judge Shirley.  On Monday, January 14, 2013, Defendant Clifford Leon Houston was indicted by the Grand Jury.  [Record Nos. 1, 6]  The initial Indictment[3] alleges that on or about January 11, 2013, the defendant knowingly possessed a firearm while being an unlawful user of a controlled substance, in violation of Title 18 of the United States Code, Section 922(g)(3). [Record No. 6]  On February 15, 2013, the defendant filed four motions to suppress.  And on

---

2  While the defendant argues that he was not removed from his ATV, but rather that he complied with law enforcement officers and stepped off the vehicle with his hands raised, the magistrate judge findings do not contradict this point. [Record No. 129, p. 9]  Further, the defendant summarized this series of events in a number of memoranda filed in support of his motions to suppress as: "Shortly after the agents entered the property, they observed the defendant, Leon Houston, crossing the property on an all-terrain vehicle.  Before Mr. Houston reached the residence at 373 Barnard Narrows Road, ATF agents drew their weapons, confronted him and *ordered him* off the vehicle." [*See, e.g.,* Record No. 15, p. 2; Record No. 17, pp. 2-3 (emphasis added).]

Concerning the rate of speed and manner in which the defendant approached law enforcement officers on his ATV the night of January 11, 2013, the Court notes that Special Agent Dobbs testified to this information and Investigator Mynatt also testified as an eye-witness.  By adopting their characterization of how the defendant approached the law enforcement officials, Magistrate Judge Shirley found their description of the facts – which the defendant did not impeach – to be credible. [*See, e.g.,* Record No. 116, p. 11 ("The Court also finds that Agent Dobb's testimony was credible and not impeached by the Defendant . . . the Court finds that the incriminating statement was voluntary and with the safe harbor provided in 18 U.S.C. § 3501(c).")]

3  At the time the defendant filed and argued his various motions to suppress, he was charged with one count of possession of a firearm while being an unlawful user of a controlled substance. [Record No. 6]  On May 7, 2013, the United States filed a Superseding Indictment, adding a forfeiture allegation and Count Two. Count Two charges the defendant with knowingly and willfully communicating to Pat Honeycutt, *via* telephone, threats to kill attorney James F. Logan, Jr., in violation of 18 U.S.C. § 875(c). [Record No. 92] On July 18, 2013, the Court granted the defendant's motion to sever Count Two from Count One and the forfeiture allegation. [Record No. 135]  Any challenges to Count Two of the Superseding Indictment will be addressed by separate order.

March 22, 2013, he filed three additional motions to suppress. [Record Nos. 14, 16, 18, 20, 47, 57, 58]

While this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which an objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Moreover, a party who fails to file objections to a Magistrate Judge's proposed findings of fact and recommendation waives the right to appeal. *See United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Having reviewed *de novo* the portions of the magistrate judge's report to which objections have been made, the Court concludes that Houston's objections are without merit. Therefore, the Court will adopt the magistrate judge's Report and Recommendation.

## II.

In his various motions to suppress, Defendant Clifford Leon Houston contends that the warrantless use of the pole camera violated his Fourth Amendment rights and that the subsequent search warrants, which relied upon evidence obtained from the warrantless video footage, are invalid. He also challenges the neutrality of the issuing magistrate judge for each of the search warrants. Additionally, he argues that he was illegally seized on January 11, 2013, and that any statements resulting from this illegal seizure should be suppressed. The defendant seeks suppression of all evidence resulting from (i) the warrantless use of the pole camera to observe

his property from October 9, 2012, to December 9, 2012; (ii) the continued use of the pole camera pursuant to the December 19, 2012 search warrant; (iii) the search of his residence on January 11, 2013; and (iv) the seizure of his person on January 11, 2013. Magistrate Judge Shirley, however, found that the defendant's arguments were without merit, and that suppression is not warranted. [Record No. 117]

As noted above, the Court construes the defendant's July 2, 2013 filing as objections to Magistrate Judge Shirley's Report and Recommendation concerning his various motions to suppress.[4] [Record No. 129] In his objections, the defendant primarily restates his arguments, which the magistrate judge found to be without merit. The defendant argues that: (i) the confidential informant is not reliable and did not provide any information which was not available to the general public; (ii) the warrantless use of the pole camera was not conducted in good faith; (iii) law enforcement unlawfully entered the property of Rocky Joe Houston to conduct a protective sweep; (iv) he had an expectation of privacy in his brother's home and, therefore, has a basis to challenge the search of his brother's residence; (v) any statements made to law enforcement on the night of January 11, 2013, should be suppressed "due to coercive tactics" of law enforcement; and (vi) law enforcement did not have probable cause to arrest him. [*Id.*] The defendant also asserts that he has "newly discovered evidence," which necessitates dismissal of this criminal matter. The defendant's arguments, however, are without merit and suppression of evidence is not warranted.

---

4 Even though the defendant's objections to the magistrate judge's Report and Recommendation lack merit, they will also be denied on the alternative ground as being untimely. *See* Fed. R. Crim. P. 59(b)(2); *Branch*, 537 F.3d at 587; *see also Thomas*, 474 U.S. at 155 (holding that failure to file objections in compliance with the required time period waive the right to appeal the district court's order).

-8-

## A.    Newly-Discovered Evidence

The bulk of the defendant's objections consist of his contention that, due to "newly discovered evidence," his brother Rocky Joe Houston's state-felony conviction[5] is invalid. [Record No. 129, pp. 2-6, 14-16]  The defendant argues that certain state law enforcement and members of the judiciary involved in his brother's state court felony conviction proceedings either did not subscribe to an oath of office or did not have signed certificates of an oath of office on file.  The defendant contends that this is a violation of not only Tennessee statutory law, but also the Tennessee Constitution and the Federal Constitution.  He asserts that, as a result, his brother's state felony conviction is invalid (and Rocky Joe Houston is, therefore, not a convicted felon).  Further, the defendant argues that, because his brother's state felony conviction is invalid, the current criminal case before the Court must be dismissed.

In short, the defendant is now attempting to collaterally attack his brother's underlying state felony conviction.   Without addressing issues of standing, other procedural issues, the substance of the defendant's allegations, or the fact that the defendant has provided no support for this claim, the Court finds that the defendant's argument does not warrant dismissal of this criminal matter.  Likewise, the argument does not warrant the suppression of any evidence. Further, even if the Court were to assume that Rocky Joe Houston's state felony conviction is unconstitutional or invalid, that is of no consequence here because it is "the status of the defendant on the date he possessed the firearm as alleged in the indictment that controls whether

---

5 Rocky Joe Houston was previously convicted by a jury in the Criminal Court of Roane County, Tennessee, for felony evading arrest, a Class E felony.  He was convicted to a one-year term of imprisonment, which was suspended for time served.  The conviction has since become final.

he has violated [§ 922(g)(1)]." *United States v. Morgan*, 216 F.3d 557, 565-66 (6th Cir. 2000). "The focus of the inquiry under §§ 921(a)(20) and 922(g)(1) is whether someone has been convicted of a felony under state law, not whether that conviction is constitutionally valid, nor whether it may be used as a predicate conviction for subsequent state prosecutions." *See United States v. Marks*, 379 F.3d 1114, 1119 (9th Cir. 2004); *see also United States v. Leuschen*, 395 F.3d 155, 157 (3d Cir. 2005); *Burrell v. United States*, 384 F.3d 22, 27-28 (2d Cir. 2004) (holding petitioner not entitled to relief when predicate felony conviction not set aside until after felon-in-possession conviction); *United States v. Wallace*, 280 F.3d 781, 784 n.1 (7th Cir. 2002).

At the time Rocky Joe Houston was indicted in *United States v. Rocky Joe Houston*, Criminal Action No. 3: 13-09-DCR, his state felony conviction had not been set aside, and it still has not. For purposes of the § 922(g)(1) charges he now faces, reliance on his state felony conviction is proper. *See Morgan*, 216 F.3d at 565-66. Thus, the defendant's argument is misplaced and Court need not reach the substance of his allegations. His objections on this issue will be overruled.

### B. The Pole Camera from October 9, 2012 to December 19, 2012

The defendant argues that law enforcement's warrantless use of the pole camera (located on public property adjacent to his residence from October 9, 2012 to December 19, 2012) violated his Fourth Amendment rights. The Government counters that the use of this camera was not a search implicating the Fourth Amendment because law enforcement could lawfully view the area covered by the camera from two public roads. Additionally, it asserts that the defendant and his brother had not manifested a reasonable expectation of privacy in the area viewed, as

evidenced by their use of billboards and hand-painted signs erected on the property approximately twenty yards off the road. The government also points to the lack of any type of fencing or barriers around the area. The United States further argues that, even if the Court were to find that the use of the pole camera during this time period implicated the Fourth Amendment, the exclusionary rule should not apply because law enforcement acted in good faith. [Record No. 33]

When law enforcement began using the pole camera to monitor Rocky Joe Houston, no court had held that the use of video surveillance to monitor the curtilage of a property required a search warrant. *See United States v. Jackson*, 213 F.3d 1269, 1280 (10th Cir. 2000), *vacated on other grounds*, 531 U.S. 1033 (2000) ("The use of video equipment and cameras to record activity visible to the naked eye does not ordinarily violate the Fourth Amendment."). Although some courts have voiced concern over the potential for abuse regarding the use of video surveillance over an extended period of time, those that examined the issue found it not to implicate an individual's Fourth Amendment rights if the camera could not see into the residence and captured no footage that was not "otherwise exposed to public view." *United States v. Urbina*, No. 06-CR-336, 2007 U.S. Dist. LEXIS 96345, at *19 (E.D. Wis. Nov. 6, 2007), *adopted by United States v. Aguilera*, No. 06-CR-336, 2008 U.S. Dist. LEXIS 10103 (E.D. Wis. Feb. 11, 2008); *see also Jackson*, 213 F.3d at 1281; *United States v. Nowka*, No. 5:11-CR-474-VEH-HGD, 2012 U.S. Dist. LEXIS 178025, at *15-16 (N.D. Ala. Dec. 17, 2012); *United States v. Brooks*, No. CR-11-2265-PHX-JAT-003, 2012 U.S. Dist. LEXIS 168737, at *19-22 (D. Ariz. Nov. 28, 2012). *See also Cuevas-Sanchez*, 821 F.2d 248, 251 (5th Cir. 1987) (holding that

where an individual erected ten-foot tall fence that blocked the view from the street, thus manifesting a subjective expectation of privacy in curtilage, video surveillance constituted a search under the Fourth Amendment). Here, the magistrate judge correctly concluded that, at the time the agents installed the pole camera in issue, silent video surveillance of unobstructed curtilage which neither involved a physical trespass nor permitted officers to view or discern activities within a residence was not deemed to be a search implicating the Fourth Amendment. [Record No. 117, pp. 17-23]

Additionally, because most of the area within the scope of the pole camera was either pasture land or open fields, the defendant did not have a reasonable expectation of privacy in those areas. *See Oliver*, 466 U.S. at 178; *United States v. Anderson-Bagshaw*, 509 F. App'x 396, 403-04 (6th Cir. 2012) (holding that video surveillance of barnyard and pasture did not constitute a Fourth Amendment search) (citing *States v. Vankesteren*, 553 F.3d 286, 291 (4th Cir. 2009) (noting that the use of surveillance cameras to film an open field does not violate a reasonable expectation of privacy)). Specifically, the four sightings of the defendant's brother Rocky Joe Houston in possession of a firearm during this relevant time period (which Special Agent Dobbs attested to and cited in support of the December 19, 2013 pole camera search warrant) occurred in the open fields of the Houston property.[6] As a result, the video footage of these sightings is not subject to suppression. [Record No. 117, p. 27]

Magistrate Judge Shirley also analyzed whether the area immediately adjacent to the defendant's mobile home at 391 Barnard Narrows Road qualifies as curtilage of that residence.

---

6  The specific dates of these sightings occurred twice on October 20, 2012, once on November 5, 2012, and once on November 20, 2012. [Record No. 17, Exh. 4, pp. 12-14 ¶¶ 19, 20, 24, 27]

*See United States v. Dunn*, 480 U.S. 294, 301 (1987) (noting that whether an area constitutes curtilage should be evaluated by weighing the factors of "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by"). Applying the factors identified as relevant in *Dunn*, the magistrate concluded that only the first factor — the proximity of the area claimed to be curtilage to the home — clearly supported treating the area as curtilage. [Record No. 117, pp. 27-28] Despite this, the magistrate judge concluded that the area is within the curtilage of the residence. In reaching this conclusion, the magistrate judge indicated that "[t]he Court makes this finding in the Defendant's favor in order to give him the greatest protection possible to his constitutional rights, even though the Defendant's own conduct in inviting the public to view his property argues against such a finding." [*Id.*, p. 28]

However, "since law enforcement officers are entitled to observe things in plain sight from publically accessible areas," a court's conclusion that an area is curtilage does not end the analysis. *Anderson-Bagshaw*, 509 F. App'x at 404. Therefore, because the pole camera enjoyed the same view that could be seen by an individual on Barnard Narrows Road or Dogtown Road, and because it did not provide law enforcement with a vantage point they could not have enjoyed from the ground, the use of the pole camera was not a violation of the defendant's Fourth Amendment rights, provided that the duration and circumstances of its use were reasonable. [Record No. 117, pp. 28-29]

-13-

As noted by the magistrate judge, other than limiting the monitoring of the camera primarily to daylight hours, the Court has no other information that the agents attempted to restrain the intrusiveness of the surveillance (for instance by ceasing recording when others besides the defendant or his brother were on the property). [*Id.*, p. 29] Additionally, although the pole camera only captured images which could be viewed from the two public roads surrounding the defendant's residence, in determining the reasonableness of law enforcement's use of the camera, ten weeks of warrantless use is questionable. Relying on recent Sixth Circuit decision in *Anderson-Bagshaw*, the magistrate judge concluded that the warrantless video surveillance of 391 Barnard Narrows Road beyond fourteen days violated the defendant's reasonable expectation of privacy. [*Id.*, pp. 29-30] The Court agrees to an extent.

Based on concerns regarding the warrantless video recording of a residence's curtilage in the manner outlined above, the Court agrees that ten weeks crosses into the unreasonable, provoking "an immediate negative visceral reaction" suggestive of the Orwellian state. *Cuevas-Sanchez*, 821 F.2d at 251. Notwithstanding this conclusion, the Court is unwilling to announce a bright-line rule of fourteen days as the cut-off date at which point the once legal police video surveillance of unobstructed curtilage from a public point of view, enjoying the same sight-lines as a passer-by, transforms into the unreasonable and illegal. And, as Magistrate Judge Shirley noted in his Report and Recommendation, no court has established a precise length of reasonable warrantless video surveillance.[7]

---

7 In *Anderson-Bagshaw* the Sixth Circuit suggested, albeit in dicta, that three weeks is too long. 509 F. App'x at 405. *But see id.* at 424 (Moore, J., concurring) ("I would hold that the video surveillance obtained using the pole camera in this case was an unreasonable search.").

Regardless, *even if* the Court were to reach the conclusion that all the video surveillance footage in this case obtained after the fourteenth day violated the defendant's Fourth Amendment rights, the exclusionary rule would not bar admission of this evidence at trial. For exclusion to be appropriate, courts must perform a balancing test to determine whether the deterrent benefits of suppression outweigh the substantial costs of "almost always requir[ing] courts to ignore reliable, trustworthy evidence." *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011); *see also United States v. Master*, 614 F.3d 236, 242-43 (6th Cir. 2010). In weighing the deterrent benefits of exclusion, courts focus on the culpability of the law enforcement conduct at issue. Where law enforcement acts with "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis*, 131 S. Ct. at 2427 (quotation marks and citations omitted).

In the present case, the record is devoid of any evidence to suggest that law enforcement acted with deliberate, reckless, or grossly negligent disregard for the defendant's Fourth Amendment rights. As noted previously, at the time officers installed the subject pole camera, no court had required a search warrant to conduct video surveillance of an unobstructed curtilage. And courts that had previously addressed the issue affirmed the warrantless use of video surveillance. *See Jackson*, 213 F.3d at 1280; *Aguilera*, 2008 U.S. Dist. LEXIS 10103, at *4-5 (adopting magistrate judge's recommendation in *Urbina*, 2007 U.S. Dist. LEXIS 96345). Moreover, the same day the Sixth Circuit filed its decision in *Anderson-Bagshaw*, 509 F. App'x 396, officers sought a search warrant for the continued use of the pole camera. This amply demonstrates good faith reliance on the absence of any judicial decision requiring a search

-15-

warrant for the long-term video surveillance of the unobstructed curtilage of a residence.  *See Davis*, 131 S. Ct. at 2429 ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.").  Suppression of the evidence would have little to no deterrent value. *See Higgins*, 557 F.3d at 391.  In short, given the facts of this matter, and in particular law enforcement's conduct, the deterrence benefits of suppression do not outweigh the cost to society.  Therefore, exclusion of this evidence is not warranted.

## C.     The December 19, 2012 Search Warrant

The defendant also contends that any evidence obtained as a result of the December 19, 2012 search warrant issued by United States Magistrate Judge H. Bruce Guyton for the continued use of the pole camera should be suppressed.  In support, he argues that the magistrate judge was not neutral and detached when he issued the warrant.  Additionally, he asserts that the warrant was not supported by probable cause.  Magistrate Judge Shirley found both contentions to be without merit.  [Record No. 117, pp. 33-46]

### 1.     Neutral and Detached Magistrate Judge

The defendant's argument that Magistrate Judge Guyton was not a neutral and detached judge when he issued the search warrant is based upon a misguided belief that his previous lawsuit against the magistrate judge biased Magistrate Guyton against the defendant.  This contention is completely without merit. *See United States v. Todd*, No. 3:05-cr-00090, 2008 WL 542972, at *4 (M.D. Tenn. Feb. 25, 2008).  As the Court has explained on several occasions, the mere fact that the defendant files a lawsuit against a judge does not demonstrate bias by the

judge. Moreover, the search warrant was issued pursuant to an investigation into the defendant's brother Rocky Joe Houston, not the defendant. In short, the defendant has failed to offer any basis to support a finding that Magistrate Judge Guyton was not a neutral and detached judge when he issued the December 19, 2012 search warrant. [*See also* Record No. 117, pp. 33-36.]

### 2. Probable Cause and Reliance on the Confidential Informant

The magistrate judge also correctly concluded that the December 19, 2012 search warrant was supported by probable cause. [*Id.*, pp. 36-46] As noted above, suppression of the pole camera footage from October 9, 2012 to December 19, 2012, is not warranted. Therefore, consideration of that evidence is proper in conducting a probable cause analysis. The December 19, 2012, supporting affidavit indicates that Rocky Joe Houston, a convicted felon, had been recorded on fourteen different days in the possession of firearms on the property. [Record No. 17-4, pp. 11-30 ¶¶ 16-30] Special Agent Dobbs also attested that, based on his prior experience and training, possessors of firearms usually keep those firearms for a lifetime. [*Id.*, p. 14 ¶ 31] This information provides sufficient evidence to conclude that the warrant was supported by probable cause and that there was a "fair probability" that the continued use of the pole camera would uncover more evidence of Rocky Joe Houston being in possession of a firearm in violation of 18 U.S.C. § 922(g). *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (noting that a search warrant must be supported by probable cause, which "is a fair probability that contraband or evidence of a crime will be found in a particular place").

The supporting affidavit also contains information that the defendant's sister (Lisa Burris) told law enforcement that Rocky Joe Houston usually possessed a firearm and that there were

-17-

a number of firearms on the property.  [Record No. 17-4, pp. 7-8 ¶ 6]  Additionally, the affidavit indicates that a home healthcare nurse informed officers that the defendant was always armed, and that she had seen multiple firearms on the property.  [*Id*., p. 8 ¶ 7]  To the extent the defendant argued against the reliability of these witnesses, the affidavit contains sufficient information to allow the issuing magistrate judge to properly weigh their credibility.  *See United States v. Hodge*, 714 F.3d 380, 385-86 (6th Cir. 2013).  In short, the magistrate judge correctly concluded that information from Burris and Nurse Long could properly be considered by the issuing magistrate judge and that this information supported a finding of probable cause. [Record  No. 117, pp. 39-41]

In his objections, the defendant argues that information provided by the confidential informant was improperly relied upon by the magistrate judge when issuing the search warrants in this matter.  However, the confidential informant had first-hand or eyewitness knowledge concerning Rocky Joe Houston's possession of firearms.  [*Id.*, p. 43]  The affidavit indicates that the confidential informant had known the Houston brothers for a number of years, was last at the Houston family property in April 2012, and had been inside both the defendant's and Rocky Joe Houston's residences.  [Record No. 17-4, p. 9 ¶¶ 10-11]  He had knowledge that the defendant and Rocky Joe Houston kept multiple firearms at their residences because he has seen them there — a fact corroborated by both Nurse Long and Burris.  [*Id.*, p. 8 ¶ 7]

The confidential informant's statement that the Houston brothers were always armed and carried two pistols in their waistband is also corroborated by Nurse Long statement that "Leon Houston was always armed, sometimes with as many as three handguns at his waist."  [*Id.,* pp.

8-9 ¶¶ 7, 11] Additionally, the confidential informant's statement that the Houston brothers never leave their property unarmed is corroborated by Burris, who indicated that Rocky Joe Houston normally carries a firearm whenever he leaves the property. [*Id.* ¶ 6] Each example demonstrates that Special Agent Dobbs's sworn affidavit provided substantial corroboration of the confidential informant's statements. Additionally, as outlined above, the confidential informant, along with Nurse Long and Burris, provided information that was not solely public knowledge or from public sources. The defendant's arguments to the contrary are without merit. [Record No. 129, p. 1]

Moreover, the level of detail in the statements provided by the confidential informant also supports a finding of reliability. *See United States v. Gunter*, 551 F.3d 472, 480 (6th Cir. 2008); *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (noting that "a detailed description of what the informant observed first-hand" is an "indicia of the informant's reliability"). For instance, the informant provided a highly-detailed description of the types of weapons carried by the Houston brothers as well as where those weapons were carried. [Record No. 17-4, p. 9 ¶ 11] Additionally, the information provided by the confidential informant was corroborated by independent police investigation. *See Illinois v. Gates*, 462 U.S. 213, 243-45 & n.13 (1983) (holding that law enforcement does not have to corroborate criminal activity to demonstrate probable cause and noting that "innocent behavior frequently will provide the basis for a showing of probable cause . . . [i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts"). [*See also* Record No. 117, pp. 44-45.] The

Court agrees with the magistrate judge's conclusions regarding the reliability of the confidential informant. This information supports a probable cause finding to support the issuance of the search warrants.

Based on the foregoing, and in consideration of the totality of the circumstances, the issuing magistrate judge had an ample basis to determine that probable cause existed and supported the belief that the continued monitoring of the pole camera would provide evidence of Rocky Joe Houston in possession of firearms in violation of 28 U.S.C. § 922(g)(1). *See Gates*, 462 U.S. at 238. Evidence including video footage of Rocky Joe Houston in possession of firearms in the open field, video footage of him shooting and carrying firearms during the dates of October 9-23, 2012, and the information provided by Lisa Burris and the confidential informant, supports such a finding. Additionally, *even if* the video surveillance from October 23 through December 18, 2012 were not considered, the affidavit still provides a sufficient basis to support the issuance of the search warrants.

### D.     The January 11, 2013 Search Warrant

In his initial motions to suppress, the defendant contends that the January 11, 2013 search of his residence was improper because of alleged deficiencies with the warrant. Specifically, he argues that: (i) Magistrate Judge Shirley was not neutral and detached when he issued the January 11, 2013, search warrant for the defendant's residence, and (ii) probable cause did not exist to issue the search warrant because the supporting affidavit does not establish a sufficient nexus between the evidence of Rocky Joe Houston's illegal possession of firearms and the defendant's home. The defendant's objections concerning the search of his residence consist of

-20-

his general contention that probable cause did not exist to support the issuance any of the search warrants. However, Magistrate Judge Shirley correctly concluded that these arguments lacked merit and found that suppression was not appropriate. [Record No. 117, p. 51]

### 1. Neutral and Detached Judge

The defendant's contention that Magistrate Judge Shirley was not a neutral and detached magistrate judge when he issued the January 11, 2013 search warrant for the defendant's residence is without merit. *See Todd*, 2008 WL 542972, at *4. Again, the defendant contends that, because he sued Magistrate Judge Shirley in 2003, the magistrate judge had a "special interest" in the search of the defendant's home. [Record No. 57]

The lawsuit cited by Defendant Houston was filed in 2003. That action was dismissed on October 10, 2003. The dismissal was affirmed by the Sixth Circuit in November 2004. As Magistrate Judge Shirley noted, this civil matter was filed and dismissed almost ten years ago, and has nothing to do with the present criminal matter now before the Court or the criminal charges against the defendant's brother. The defendant has failed to demonstrate that the that Magistrate Judge Shirley has a personal, direct, or monetary interest in the outcome of this criminal matter, nor is he able to demonstrate that the magistrate judge was acting primarily in a law-enforcement capacity. *See Todd*, 2008 WL 542972, at *4. The defendant has not overcome the presumption that Magistrate Judge Shirley was neutral and detached when the search warrant was issued for the defendant's residence. *See id.* at *5. Again, as noted above, the mere fact that the defendant filed a lawsuit against a magistrate judge does not establish a

-21-

personal bias by the judge. *See In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005). Here, there is no evidence of bias to support the defendant's argument on this point. [*See also* Record No. 88.]

## 2. Probable Cause

The defendant's assertion that the January 11, 2013, search warrant for his residence was not supported by probable cause also lacks merit. Specifically, he contends that Special Agent Dobbs's supporting affidavit does not provide a sufficient nexus between his residence at 391 Barnard Narrows Road and his brother's alleged illegal possession of firearms. However, the warrant was not only supported by probable cause, but it also provided a sufficient basis to determine a nexus between the defendant's residence and evidence of Rocky Joe Houston's possession of firearms. *See United States v. Hawkins*, 278 F. App'x 629, 634 (6th Cir. 2008) (noting that the supporting affidavit of a search warrant "must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items").

Specifically, Special Agent Dobbs's affidavit indicated that numerous firearms were seen inside the defendant's residence and that this was a location where Rocky Joe Houston spent a majority of each day. On multiple occasions, law enforcement witnessed Rocky Joe Houston possess and shoot firearms within the curtilage of the defendant's residence. Officers also observed him carry a rifle into the defendant's residence on one occasion. [Record No. 19-2, p. 14 ¶ 19] Special Agent Dobbs also attested that his training and experience reveals that persons illegally possessing firearms often hide them at a family member's residence. [*Id.*, pp. 16-17 ¶ 32] The Court agrees with the magistrate judge that "this information provides probable cause

that firearms possessed by Rocky Houston would be found at the Defendant's residence."

[Record No. 117, p. 51]

### E.    The January 11, 2013 Stop and Seizure of Defendant Clifford Leon Houston

Defendant Clifford Leon Houston argues that his statements made to law enforcement the night of January 11, 2013 must be suppressed because they are the result of an illegal seizure of his person.  [Record No. 129, pp. 7-8, 13]  He argues that, because law enforcement officers had not yet obtained a search warrant for Rocky Joe Houston's residence at 373 Barnard Narrows Road, they had no right to be on the premises and, therefore, no right to take him into custody.  [*Id.*, p. 7]  Further, he contends that no exigent circumstances existed to justify a protective sweep of his brother's residence.  Although Magistrate Judge Shirley found these arguments to be without merit, the defendant raises the same issues in his objections.

### 1.    Standing

Even though this issue was not addressed by the parties, the magistrate judge correctly concluded that the defendant did not have a legitimate expectation of privacy in his brother's home or curtilage and, therefore, no basis to challenge the entry or search of that properrty. [Record No. 117, pp. 52-53 (citing *United Sates v. McNeal*, 955 F.2d 1067 (6th Cir. 1992) (declining to confer standing to defendant where officers conducted a protective sweep of an apartment to secure it pending the arrival of a search warrant and, in the process, seized the defendant))]  Magistrate Judge Shirley concluded that "the Court has no information that the Defendant had any privacy interest in his brother's residence, *i.e.*, there is no evidence that he was an overnight guest there, a frequent visitor, kept clothing or personal items there, etc." [*Id.*,

p. 53]  While the defendant objects to this finding and argues that his brother "often times tells [him] to watch over his home when he is gone . . . due to the fact that there have been a lot of break-ins in the community," this is insufficient to confer standing to contest the search of the property.

Defendant Clifford Leon Houston bears the burden of proving he has a protectable privacy interest in his brother's residence at 373 Barnard Narrows Road.  *See United States v. Ponder*, 240 F. App'x 17, 19 (6th Cir. 2007).  Houston must demonstrate that he (1) manifested a subjective expectation of privacy in the premises searched, and (2) society is prepared to recognize that expectation as legitimate.  *See Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994). Under these standards, the defendant is unable to establish that he manifested a reasonable expectation of privacy in his brother's residence.

There is no evidence to support a finding that the defendant had any privacy interest in his brother's residence.  *See, e.g., United States v. Jimmie Larry*, 129 F. App'x 127, 130 (6th Cir. 2005) (holding son lacked standing to contest search of his mother's apartment because he rarely made social visits, was not allowed in the apartment when she was not there, maintained his own separate residence where he kept all his personal belongings and paid bills, was never an overnight guest, and was only present at his mother's residence when she called him "to do something"); *United States v. Heath*, 259 F.3d 522, 533 (6th Cir. 2001) (finding that defendant had standing to contest search of his cousin's apartment because, in addition to the familial relationship, the defendant had stayed there weekly for two years, had a key, and "unfettered access" to the residence); *United States v. Aguirre*, 839 F.2d 854, 859 (1st Cir. 1988) (holding

-24-

defendant lacked standing to challenge search of an apartment where defendant denied any interest in the items seized and there was no proof of former usage); *United States v. Buckner*, 717 F.2d 297, 300 (6th Cir. 1983) (determining that the defendant's relationship alone did not confer standing to contest search of his mother's apartment); *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) (holding that fact the defendant paid portion of rent and had key and unlimited access, was sufficient to confer standing to challenge search, even though the defendant lived elsewhere). Fourth Amendment guarantees do not extend to all persons legitimately on the premises, and a person who is "merely present with the consent of the householder" does not have standing to claim its protections. *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

Here, there is no evidence of Clifford Leon Houston residing or sleeping at 373 Barnard Narrows Road. Special Agent Dobbs's supporting affidavits for the four search warrants indicate that the residence at 391 Barnard Narrows Road "seems to be the primary residence of Leon Houston, as he has not been observed going to, or coming from any other residence, and he appears to sleep at the 391 Barnard Narrows location." [*See, e.g.*, Record No. 15-1, p. 15 ¶ 15] The record is devoid of any evidence supporting a finding that the defendant spends time, with any type of frequency or duration, at the 373 Barnard Narrows Road residence. Indeed, the opposite seems to be true. The evidence of record indicates that a vast majority of the defendant's and his brother's time is spent at or around the defendant's residence at 391 Barnard Narrows Road. Likewise, there is no evidence that the defendant paid any portion of the bills or costs associated with the residence at 373 Barnard Narrows Road.

Next, the defendant has not offered any evidence which indicates that he kept any personal items at his brother's residence, had a key to the residence, or unfettered access. Instead, the evidence before the Court demonstrates that the defendant maintains his own residence where he invariably keeps his own personal items, sleeps, and spends most of his time. Although the larger area occupied by the three residences of 412 Barnard Narrows Road, 391 Barnard Narrows Road, and 373 Barnard Narrows Road is identified in the shorthand as the "Houston family property," there is no evidence that the defendant has any property or possessory interest in Rocky Joe Houston's primary residence located at 373 Barnard Narrows Road, a fact bolstered by the defendant's own description of property as the "premises of Rocky and Nancy Houston." [Record No. 129, p. 7] Also, while not controlling since the burden remains with the defendant, law enforcement treated all three residences as separate and distinct areas, as established by the fact that they sought and received a separate warrant for each property. [*See, e.g.*, Record Nos. 15-1, 15-2, 15-3]

The only factual allegation the defendant offers as evidence of a legitimate and reasonable expectation of privacy in his brother's property is that his brother occasionally *tells* him to watch over his property when he goes to get groceries or to pick up his wife at work because "there have been a lot of break-ins in the community." [Record No. 129, p. 8] This assertion belies the defendant's allegation that he has a reasonable privacy expectation in his brother's property. The defendant does not indicate whether he is even allowed on the premises of his brother's residence, but only that he is asked to "watch over" it — something which is entirely possible to do from his own residence since the properties are adjacent to one another.

-26-

Further, the defendant does not contend that he has unlimited access to the property. Instead, any access to the residence is restricted and dictated by the explicit instruction of his brother. This factual averment leads to the conclusion that any access the defendant may have – if he has any at all – is for the limited purpose to make sure there are no break-ins. It is also limited both in frequency and in duration to only those times where his brother is gone on short trips into town.

Thus, the only factual support Defendant Clifford Leon provides as evidence of his contention tends to refute any finding that he had a reasonable expectation of privacy in his brother's residence. In short, the defendant has failed to offer sufficient evidence to support a finding that he manifested a reasonable expectation of privacy in his brother's residence that society is willing to recognize as legitimate. *See Bonds*, 20 F.3d at 701. The Court concludes that he does not have standing to challenge the entry or search of his brother's residence at 373 Barnard Narrows Road. *See Ponder*, 240 F. App'x at 19.

### 2. The Warrantless Arrest of the Defendant and the Defendant's Statements to Law Enforcement

#### a. Initial Detention

After correctly concluding that Houston does not have standing to contest law enforcement's presence on his brother's property on January 11, 2013, the magistrate judge found that the warrantless arrest of the defendant was also proper. [Record No. 117, pp. 53-60] Magistrate Judge Shirley concluded that the officers properly conducted a *Terry* stop when they initially detained the defendant. *See United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) ("[A] brief investigative stop, or *Terry* stop, by an officer who is able to point to 'specific and

articulable facts' justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure." (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968))). While the defendant does not directly address this conclusion in his objections, he contends that he was unlawfully and unreasonably seized at gun point and held against his will.[8] [Record No. 129, pp. 7-13] Houston argues that he posed no threat to the law enforcement, and he objects to the finding that he approached on his ATV in an aggressive manner or at a rapid speed. The defendant's objections are unpersuasive.

In determining the validity of an investigative stop, "the totality of the circumstances — the whole picture — must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981). A reviewing court must determine whether the detaining officers had a reasonable basis for the stop, *i.e.*, a reasonable suspicion supported by specific articulable facts. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). If so, the court must next examine whether the intrusiveness of the stop was reasonably related to the situation, *i.e.*, the reasonableness of the detaining officers' actions given the totality of circumstances. *Id.*

Here, the detaining officers had a reasonable suspicion supported by artculable facts that a crime was about to occur. At the time the officers were on the premises of Rocky Joe Houston conducting a "protective sweep" in anticipation of a search warrant, the officers witnessed the defendant approach their position at a high rate of speed riding an ATV. And they could see the defendant was armed. These facts alone warrant the initial detention of the defendant. But the detaining officers' conduct appears even more reasonable given that they were aware of the

---

[8] The defendant begins his objections regarding his stop and seizure by arguing that he objects to "everything the Court says under this section" and that it is "nothing but lies and more lies." [Record No. 129, p. 7]

defendant's hostile attitude toward law enforcement — a fact the defendant and his brother made

publicly known.  Indeed, the basis of the brother's anti-law enforcement sentiment is articulated

by Special Agent Dobbs's specific request for "no knock" search warrants for the three

residences on the Houston family property.  It states, in part:

> I would also request that "no-knock" warrants be issued for the three locations, and I also ask for authority to execute same at any time of the day or night for the following reasons.  Rocky and Leon Houston have both clearly shown their violent tendencies toward law enforcement officers.  This has been shown in the 2004 vehicle chase Rocky Houston was involved in, the 2006 shooting deaths of the Roane County Deputy and his ride along companion, and the apparent attempted intimidation of a Roane County Deputy by Rocky Houston in February 2012.  As recently as August and September 2012, Rocky and Leon Houston were featured in the media again for having posted graphic crime scene pictures of the deceased deputy and his ride along companion on a large sign in front of 391 Barnard Narrows Road.  When speaking to the media, Rocky and/or Leon Houston generally stated they wanted the world to remember what happened the last time unwelcome visitors showed up at the family farm.  In reviewing past media coverage of Rocky and Leon Houston, they said on multiple occasions they acted in self-defense and that they will act in self-defense again.  They have both been observed with what appears to be multiple firearms over the last few weeks. I believe these observations, combined with their prior history and the information obtained from family members and the confidential informant, demonstrate that an extreme risk exists for law enforcement officers attempting to execute these warrants.  I respectfully request that "no knock" and anytime day or night provisions be included in the requested search warrants to allow the warrants to be executed in the manner determined to provide the highest degree of safety for the law enforcement officers executing said warrants.

[Record No. 15-1, p. 22 ¶ 39]

The defendant "objects stren[u]ously" to the magistrate judge's finding that the officers

were aware of his hostile attitude toward law enforcement.  [Record No. 129, p. 11]  However,

he goes on to state that "[he and his brother] have a lack of respect for public corruption and

police abuse to [their] family due to a conspiracy to block civil rights."  [*Id.*]  And, while he "has

-29-

every respect for honest law abid[]ing law enforcement . . . [u]nfortunately, Roane county has a leng[thy] history of corrupt sher[]iffs and judges and clerks." [*Id.*, p. 12] The defendant's averment regarding his *conditional* "respect" for law enforcement does little to put the mind at ease, especially given that the defendant seems to be of the belief that anyone involved in the lawful adjudication of this criminal matter is a domestic terrorist partaking in treason. [*Id.*, p. 7]

Given the totality of circumstances faced by the officers on the night of January 11, 2013, the Court finds that their actions were entirely reasonable.[9] Confronting the defendant at gunpoint after being approached at a high rate of speed, handcuffing him, and then escorting him to Rocky Joe Houston's carport was reasonable given the potential danger an armed family member presented to the officers preparing to secure the property for the execution of a search warrant. *See Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999)*; United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986). Simply put, the detaining officers had more than a reasonable basis to initially detain the defendant on the night of January 11, 2013, and they acted in a reasonable manner in procuring the detention of the defendant given the potential threat to their safety.

### b. The Length of Detention and Defendant Clifford Leon Houston's Statements

---

9 The defendant objects to the magistrate judge's conclusion that the detaining officers' actions were reasonable and appropriate. His objection, however, consists of his contention that the officers had not yet secured a search warrant at the time they were confronted by the defendant on his brother's property and, therefore, did not have a right to point a gun at the defendant. [Record No. 129, p. 13] The Court has already determined that the defendant does not have standing to contest the officers presence on his brother's property. Additionally, it is well-settled that officers conducting an investigatory stop "may approach with guns drawn and may handcuff the suspect, when those actions are necessary for officer safety." *United States v. Correa*, No. 12-CR-20075, 2013 U.S. Dist. LEXIS 100953, at *11-12 (C.D. Ill. July 19, 2013) (citations omitted).

-30-

The magistrate judge next examined the propriety of the length of the defendant's detention. [Record No. 117, pp. 58-59] He concluded that Houston's detention was appropriate and found it to be objectively reasonable pursuant to the *Summers* doctrine, in light of the fact that approximately ten to fifteen minutes after the defendant had been detained, the officers were notified that search warrants had been issued for three subject residences. 452 U.S. at 703-05 (holding that officers executing a search warrant to search for contraband may detain any occupants of the location to be searched because such detention is minimally intrusive, preserves officer safety, prevents flight in the event that incriminating evidence is uncovered, and facilitates the orderly completion of the search). At the time the defendant was detained, he was near his brother's residence, was in sight of his own residence, and his earlier conduct of approaching the officers armed reasonably caused the officers to be concerned for their safety if the defendant were not detained during the search. *See id.* The officers' continued detention of the defendant incident to the execution of the search warrants was appropriate. [Record No. 117, pp. 58-59]

After the defendant was handcuffed, an officer properly advised him of his *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966) The defendant then agreed to speak to the officer. Houston made the alleged statements that he had been drinking and getting high earlier that night after waiving his *Miranda* rights. And the defendant does not deny that he was advised of his *Miranda* warnings.

-31-

However, in his objections, the defendant argues that any statements he may have made to law enforcement is subject to the *McNabb-Mallory* rule[10] and should be suppressed due to coercive tactics. Houston does not explain how the officers acted "coercively." However, he contends that he was initially seized at gun point and then interrogated for four hours while being held: (i) without a criminal complaint; (ii) without being brought before a judicial officer; and (iii) without having a warrant issued for his arrest. [Record No. 129, p. 9] He also contends that the officers did not have probable cause to arrest him because they had not witnessed him commit any unlawful act. [*Id.*, p. 10] Additionally, the defendant generally alleges that any statements he made were not voluntary because they were the result of the unlawful seizure of his person. [*Id.*, pp. 13-14]

Although the defendant alleges that his statements were not voluntarily made due to "coercive tactics," he provides no evidence to support such a finding.[11] *See McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (holding that "[i]f the police misconduct at issue was not the

---

10 The Court has already addressed the defendant's argument concerning the alleged violation of the *McNabb-Mallory* rule and the timeliness of his arraignment in the Memorandum Opinion and Order entered July 29, 2013, concerning the defendant's various motions to dismiss the Criminal Complaint and Indictment. [*See also* Record No. 116, pp. 7-11.] Addressing the latter of these issues first, because a judicial determination of probable cause was made within 48 hours of the defendant's arrest, the warrantless arrest did not violate his due process rights. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). The defendant's *McNabb-Mallory* rule argument is also without merit. The defendant was arrested shortly after 8:00 p.m., on January 11, 2013, the Criminal Complaint was signed the next day, and on January 14, 2013, the defendant appeared before the Court on a Criminal Complaint. [Record Nos. 1, 2] As the Court previously articulated, the defendant's alleged confession was made well within six hours of his arrest and detention, was voluntary, and occurred after he had been advised of his *Miranda* rights and waived the same. Thus, suppression is not warranted. *See* 18 U.S.C. § 3501(c); *Mallory v. United States*, 354 U.S. 449 (1957); *see also United States v. McDowell*, 687 F.3d 904, 908-09 (7th Cir. 2012).

11 Magistrate Judge Shirley also addressed this issue in his Report and Recommendation concerning the defendant's motions to dismiss the Criminal Complaint and Indictment, finding that the defendant's alleged incriminating statements were voluntary. [Record No. 116, p. 11]

-32-

crucial motivating factor behind petitioner's decision to confess, the confession may not be suppressed") (internal quotation marks and citations omitted); *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The only allegation he offers is that he was handcuffed and questioned for four hours. However, even if true, such facts do not support a finding that his statements were the product of police coercion or that they were involuntary. *See Shriner v. Wainwright*, 715 F.2d 1452, 1456 (11th Cir. 1983) ("The use of handcuffs does not establish coercion.") (citation omitted). The defendant was properly handcuffed and detained both initially and incident to the execution of the search warrants. There is no evidence that the interviewing officer had his weapon drawn during this interview or that he abused the defendant physically or psychologically. Moreover, at the time the defendant made the alleged statements, he had been advised of his rights under Miranda and he agreed to continue to speak with the interviewing officer. Because the defendant's statements were clearly voluntary, suppression is not warranted.

Finally, the defendant's argument that the officers did not have probable cause to arrest him for being an unlawful user of a controlled substance in possession of a firearm also lacks merit. The defendant was in possession of multiple firearms the night of January 11, 2013. Additionally, the defendant stated to the interviewing officer that he had been getting high earlier that night. Upon the lawful search of his residence pursuant to a search warrant, officers uncovered marijuana residue, drug paraphernalia, and reported the detection of a strong odor of marijuana in the defendant's trailer/residence during the execution of the warrant. Investigator Mynatt also testified that the defendant appeared to be intoxicated when he arrived at the scene.

-33-

Even if the Court disregarded the defendant's admission that he had been getting high prior to his detention and arrest, the officers had sufficient probable cause to believe that the defendant was an unlawful user of a controlled substance in the possession of a firearm on the night of January 11, 2013.

### IV.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1.      The Report and Recommendation of Magistrate Judge C. Clifford Shirley, Jr., [Record No. 117] is **ADOPTED** and **INCORPORATED** by reference.

2.      Defendant Clifford Leon Houston's Objections to Magistrate's Report and Recommendation [Record No. 129] are **OVERRULED**.

3.      Defendant Clifford Leon Houston's Motions to Suppress [Record Nos.14, 16, 18, 20, 47, 57, 58] are **DENIED**.

This 30th day of July, 2013.



Signed By:
*Danny C. Reeves*
United States District Judge