UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:13-CR-10 |
| v. | ) | |
| | ) | (REEVES / SHIRLEY) |
| CLIFFORD LEON HOUSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Suppress Defendant[']s Statement and[/]or Telephone Conversation Contained in Count 2 of Indictment 3:13-CR-10 [Doc. 100], Motion to Dismiss Count 2 of Indictment 3:13-CR-10 [Doc. 104], and Motion to Suppress Statement in Count 2 of Indictment [Doc. 123][1]. The parties came before the undersigned on June 26, 2013, for a motion hearing on the Defendant's motions relating to Count Two of the Superseding Indictment. Assistant United States Attorney David C. Jennings appeared on behalf of the Government. Defendant Clifford Leon Houston represented himself with the

---

[1]This second suppression motion [Doc. 123] was filed on June 25, 2013, twenty-two days after the expiration of the motion deadline and the day before the motion hearing. Although the motion is untimely, the arguments for suppression contained therein merely duplicate those alleged in his earlier Motion to Suppress [Doc. 100]. Accordingly, in the interest of judicial economy, the Court will address this motion in conjunction with document 100.

1

assistance of elbow counsel Attorney Charles I. Poole.[2] The Court heard the testimony of the Government's witness and the arguments of the parties. The transcript [Doc. 152] of this hearing was filed on July 24, 2013.[3] Thereafter, the Court took the motions under advisement.

For the reasons stated herein, the Court recommends that the Defendant's motions to dismiss Count Two and to suppress a recorded telephone conversation made from the Blount County Jail on February 10, 2013, be denied.

## I. POSITIONS OF THE PARTIES

The Defendant is charged in a two count Superseding Indictment [Doc. 92] with possessing firearms on January 11, 2013, while being an unlawful user of a controlled substance (Count One) and with knowingly and willfully transmitting a threat to kill an attorney in interstate commerce on February 10, 2013 (Count Two). The Defendant argues that Count Two of the Indictment must be dismissed because he was not served with a warrant or criminal complaint on this charge and was thus denied due process. He also asks the Court to dismiss Count Two because the telephone conversation upon which the charge is based is the fruit of his unlawful seizure. Additionally, the Defendant moves the Court to suppress his recorded telephone conversation of February 10, 2013. He contends that the jail authorities' monitoring and recording of this

---

[2]On July 18, 2013, the Court granted [Doc. 135] the Defendant's motion to sever Count Two of the Superseding Indictment for a separate trial. The Court also granted the Defendant's request that it appoint counsel to represent him on Count Two and appointed Attorney Poole. At the time of the motion hearing, however, the Defendant represented himself on both Counts with the assistance of Attorney Poole as elbow counsel.

[3]All citations are to the transcript [Doc. 152] of the June 26 hearing, unless otherwise noted.

2

conversation violates his Fourth Amendment right to be free of warrantless searches and seizures and his Fifth Amendment right to not be compelled to incriminate himself.

The Government argues that the Defendant was charged by Superseding Indictment and has no right to be charged by a criminal complaint with respect to Count Two. It also contends that the Court has already properly ruled that the search of the Defendant's home was pursuant to a valid search warrant. Accordingly, the Defendant was properly arrested and detained, and his February 10, 2013 jail telephone conversation is not the fruit of an illegal seizure. Moreover, it argues that the Defendant has no legitimate expectation of privacy in calls made from the jail.

## II. SUMMARY OF TESTIMONY

The Government presented the testimony of Special Alcohol, Tobacco, and Firearms (ATF) Agent Jason Dobbs. Agent Dobbs testified that he has been a special ATF agent for five years and is the investigating agent in the Defendant's case. [Tr. at 5] He stated that following the Defendant's arrest in this case, he monitored the Defendant's telephone conversations at the Blount County Detention Center. [Tr. at 6] He testified that he is familiar with the telephone system at the Blount County Detention Center. [Tr. at 6] He listened to a call between the Defendant and his girlfriend Pat Honeycutt in February 2013. [Tr. at 6] Agent Dobbs stated that at the beginning of that call, as in all telephone calls at the jail, is a recording that states the call is from an inmate at the Blount County Detention Center, the call is being recorded, and the call may be monitored. [Tr. at 6] He said that when an inmate is booked into the Blount County Detention Center, he receives a PIN number that allows him to use the jail telephone system. [Tr. at 6]

Agent Dobbs stated that in the February 2013 telephone conversation that is the basis

3

for Count Two of the Superseding Indictment, the Defendant identified himself as Leon and was speaking to Ms. Honeycutt. [Tr. at 8-9] The phone call lasted ten to fifteen minutes. [Tr. at 11] Agent Dobbs testified that during this call, the Defendant made multiple threats to kill James Logan when he got out of jail and told Ms. Honeycutt to tell others to shoot Mr. Logan if they saw him on the Defendant's property. [Tr. at 11] Agent Dobbs stated that Mr. Logan is an attorney who represented the Defendant in a murder case in 2006. [Tr. at 9] After the Defendant's arrest in this case, Mr. Logan filed paperwork to take possession of the Defendant's property, which was used as collateral for the prior legal services. [Tr. at 10]

On cross-examination, Agent Dobbs testified that the Defendant was incarcerated at the Blount County Detention Center following his arrest on probable cause after a search of his residence pursuant to a search warrant. [Tr. at 11-12] He stated that the telephone conversation at issue in this case was a recorded jail telephone call in which notice was provided that the call was being monitored and recorded. [Tr. at 13] He said the instant telephone conversation was different from a private telephone conversation for which an agent must have a Title III wiretap to monitor the conversation. [Tr. at 13] He stated that the jail recorded inmates' telephone conversations for a number of reasons, including for security purposes, to learn whether contraband is being brought into the jail, and to discover whether threats are being made to witnesses or other individuals. [Tr. at 14, 18] Agent Dobbs testified that he did not get a warrant to obtain the recordings of the Defendant's telephone conversations at the jail. [Tr. at 16] He reiterated that the recording stating the call is being recorded occurs at the beginning of the jail telephone calls. [Tr. at 17] He stated that it is routine practice to monitor a defendant's jail telephone conversations after he or she is arrested. [Tr. at 18]

4

In response to a question from the Court, Agent Dobbs stated that he has been told that there are signs at the jail that inform the inmates that their calls are monitored and recorded but that he has not seen these signs personally. [Tr. at 20]

### III. FINDINGS OF FACT

In February 2013, the Defendant, a federal inmate at the Blount County Detention Center, made a telephone call on the jail telephone system to Pat Honeycutt. At the beginning of the call, an automated recording played, stating that the caller was an inmate, the call was being recorded, and the call could be monitored. Special ATF Agent Jason Dobbs subsequently listened to the recording of this telephone conversation and identified the Defendant and Ms. Honeycutt as the parties on the call, which subsequently formed the basis of Count Two of the Superseding Indictment.

### IV. ANALYSIS

The Defendant challenges the constitutionality of Count Two of the Superseding Indictment and the Government's interception of the telephone conversation on which it is based. The Defendant asks the Court to dismiss Count Two because he was charged in violation of his right to due process for two reasons: (1) The charge is the result of his illegal arrest on January 11, 2013, and (2) he was never served a warrant or criminal complaint with regard to Count Two. The Defendant also contends that the telephone conversation, upon which Count Two is based, must be suppressed because (1) it was gained without a warrant in violation of the Fourth Amendment and (2) its use at trial would violate his Fifth Amendment right not to incriminate himself. The Court

analyses each of these arguments in turn.

### A. Motion to Dismiss Count Two

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. Const., amend. V. In the instant case, the Defendant was arrested following a search of his home on January 11, 2013. On January 12, 2013, the Court signed a criminal complaint [Doc. 1], charging the Defendant with possession of firearms while being an unlawful user of a controlled substance on January 11, 2013. On January 15, 2013, the Grand Jury returned an Indictment [Doc. 6] also charging the Defendant with possession of firearms while being an unlawful user of a controlled substance on January 11, 2013. Following a detention hearing on January 17, 2013, the Court found [Doc. 9] that the Defendant must be detained pending his trial. On May 7, 2013, and while the Defendant was still in custody pending his trial, the Grand Jury returned a Superseding Indictment [Doc. 92], retaining the original charge as Count One[4] and charging in Count Two that the Defendant knowingly and willfully transmitted a threat to kill Attorney James Logan in interstate commerce via a telephone call to Pat Honeycutt on February 10, 2013.

The Defendant asks the Court to dismiss Count Two of the Superseding Indictment because (1) it is the fruit of his illegal seizure on January 11, 2013, and (2) he received insufficient process because he was never served a warrant or criminal complaint on Count Two.

---

[4]The Superseding Indictment also added forfeiture allegations to Count One.

*(1) Fruit of the Poisonous Tree Claim*

The Defendant argues that the telephone conversation on which Count Two is based is the fruit of his illegal seizure on January 11, 2013, and also stems from the search of his home pursuant to an invalid search warrant on that same day. He contends that the exclusionary rule should be applied to exclude all evidence of the illegal search and seizure, including "indirect evidence" such as his February 10, 2013 jail telephone conversation.

Evidence obtained in derogation of the Fourth Amendment must ordinarily be excluded from trial. Wong Sun v. United States, 371 U.S. 471, 485-86 (1963). This "fruit of the poisonous tree doctrine" excludes not only that evidence that was illegally seized, but all evidence gained from the "'exploitation'" of an illegal search or seizure unless that evidence is sufficiently attenuated from the illegal actions as to "'purge[ it] of the primary taint.'" Id. at 488 (citing Maguire, Evidence of Guilt, 221 (1959)). The Court finds that the February 10, 2013 jail telephone conversation does not come within the "fruit of the poisonous tree" doctrine for two reasons. First, the Court has *not* found that the seizure of the Defendant on January 11, 2013, or the search of his residence on that same date pursuant to a search warrant violated the Fourth Amendment.[5] Second, the jail telephone call occurred nearly one month later and was made by the Defendant voluntarily to his girlfriend, not to a law enforcement officer or other agent of the Government. Thus, the Court finds that the February 10 jail telephone conversation is too attenuated from the January 11 search and seizure to be considered the fruit of the Defendant's arrest or the search of his home. See, e.g.,

---

[5]The Court has already extensively analyzed [Doc. 117] the propriety of the seizure of the Defendant and the search of his residence pursuant to a search warrant on January 11, 2013, and found neither to be illegal or unconstitutional. The District Court adopted [Doc. 166] the undersigned's recommendations and denied the Defendant's motions to suppress.

7

United States v. Gross, 662 F.3d 393, 406 (6th Cir. 2011) (holding that a confession volunteered by defendant two months after an unconstitutional stop and while defendant was detained on an outstanding arrest warrant was "sufficiently attenuated").

*(2) Insufficient Process Claim*

Second, the Defendant argues that Count Two of the Superseding Indictment should be dismissed because he was never served with a warrant or a criminal complaint on the allegations in Count Two. The purpose of a criminal complaint is to begin criminal proceedings against an individual in federal court. 1 Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 41 (4th ed. 2008). "No complaint is needed, however, if a more formal determination of probable cause is made first. If an indictment has been returned or an information filed prior to the arrest, . . . probable cause has already been established and there is no need for a complaint." Id. In the instant case, the Grand Jury returned a Superseding Indictment [Doc. 92] against the Defendant on May 7, 2013, finding probable cause to believe the Defendant had committed the crime alleged in Count Two. The Defendant was already in federal custody at that time. Accordingly, there was no need for a criminal complaint or arrest warrant with regard to Count Two. The Court recommends that the Defendant's motion to dismiss Count Two [Doc. 104] be denied.

**B. Motion to Suppress Telephone Conversation**

The Defendant also moves to suppress the telephone conversation upon which Count Two of the Superseding Indictment is based. In this regard, he contends (1) the telephone conversation was gained without a warrant in violation of the Fourth Amendment and (2) its use at

8

trial would violate his Fifth Amendment right not to incriminate himself. The Government responds that a search warrant or wiretap was not necessary for the Government to monitor the Defendant's jail telephone conversations because the Defendant had no expectation of privacy in his jail telephone conversations.

*(1) Fourth Amendment Claim*

The Defendant argues that the Government's warrantless seizure of his February 10, 2013 telephone conversation with Pat Honeycutt violates his rights under the Fourth Amendment. The Government responds that the Defendant has no expectation of privacy in his jail telephone conversations because he was advised that jail calls are being recorded.

The Court finds that the Defendant did not have a legitimate expectation of privacy in his jail telephone calls. "[N]o prisoner should reasonably expect privacy in his outbound telephone calls. Although prisoners do not forfeit all their privacy rights at the jailhouse steps, they do have those rights severely curtailed." United States v. Van Poyck, 77 F.3d 285, 291 (9th Cir. 1996), see United States v. Gangi, 57 F. App'x 809, 814 (10th Cir. 2003) (agreeing with Ninth Circuit that jail inmates expectation of privacy in jail telephone calls is not objectively reasonable and that the recording of jail telephone calls does not trigger the protections under the Fourth Amendment); see also Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that prisoners do not have a legitimate expectation of privacy in their prison cells and that a search thereof does not implicate the Fourth Amendment). "Accordingly, where a facility provides some notice to inmates that calls may be monitored, the facility's 'practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of

the privacy rights of pretrial detainees' or of 'noninmates' who receive calls from pretrial detainees." United States v. Friedman, 300 F.3d 111, 123 (2d Cir. 2002) (quoting United States v. Wiloughby, 860 F.2d 15, 21-22 (2d Cir. 1988)). In Van Poyck, the Ninth Circuit found that the Defendant had consented to the interception of the incriminating recorded jail conversations because he signed a form at booking consenting to the jail's monitoring of all conversations. 77 F.3d at 291. Similarly, the Tenth Circuit in Gangi found the interception and recording of a jail telephone conversation did not violate the Fourth Amendment because the defendant inmate "impliedly consented to the taping of his calls" by making them after being housed in a different pod, which had signs over the jail telephones explaining that the calls were recorded. 57 F. App'x at 814.

In the instant case, Agent Dobbs, who monitored the Defendant's jail telephone conversations, testified that at the beginning of each telephone conversation from the jail was a recorded message stating that the call was being recorded and could be monitored. Thus, the Defendant was put on notice that his jail telephone conversations were not private and, instead, were being recorded and monitored. Unfortunately, the only evidence before the Court with regard to notice to prisoners of the recording and monitoring of jail telephone calls is this testimony by Agent Dobbs. The Court had no evidence regarding whether there were signs located by the jail telephones or about information given to inmates of the Blount County Detention Center at booking regarding the recording of jail telephone calls. Moreover, the Government did not play the recorded jail telephone conversation in question for the Court. Nevertheless, the only evidence before the Court is that the Defendant had notice that his jail telephone conversation with Ms. Honeycutt was being recorded and could be monitored. Accordingly, the Court finds that the Defendant had no legitimate expectation of privacy in his telephone conversation with Ms. Honeycutt and that the Fourth

Amendment does not require the suppression of the jail telephone conversation.[6]

*(2) Fifth Amendment Claim*

The Defendant also summarily argues that the use of his recorded jail telephone conversation of February 10, 2013, violates his Fifth Amendment right not to incriminate himself. The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. Miranda v. Arizona, 384 U.S. 436,478-79 (1966). Generally, "[v]olunteered statements of any kind are not barred by the Fifth Amendment[.]" Id. at 478. In the instant case, the Defendant voluntarily engaged in the telephone conversation with his girlfriend, who is not a law enforcement officer or an agent of the government, while on notice that his telephone conversation was being recorded and possibly monitored. See Alexander v. Connecticut, 917 F.2d 747, 750-51 (2d Cir. 1990) (concluding that defendant's voluntary statement regarding location of corpse to friend visiting him at jail was not gained in violation of the Fifth Amendment because the Defendant did not know that his friend was working with the police). Accordingly, the Court finds that the Government's use of the Defendant's February 10, 2013 jail telephone conversation does not violate the Fifth Amendment.

---

[6]The Court also notes that although not raised by the Defendant, the recording of jail telephone conversations does not violate Title III of the Omnibus Crime Control and Safe Streets Act, which governs wiretapping. See United States v. Paul, 614 F.2d 115, 117 (6th Cir. 1980) (holding that the routine recording of jail telephone calls for security purposes fell within the exception in 18 U.S.C. § 2510(5)(a) of Title III when the inmates have "reasonable notice" that the calls may be monitored).

11

The Court concludes that the Defendant's rights under the Fourth and Fifth Amendments have not been violated with regard to the recording of his jail telephone conversation and that his motions to suppress the jail telephone conversation [Docs. 100 and 123] should be denied.

## V. CONCLUSION

After carefully considering the evidence, the parties' filings and arguments, and the relevant legal authorities, the Court finds no basis to dismiss Count Two of the Superseding Indictment or to suppress the Defendant's recorded telephone conversation at the Blount County Jail on February 10, 2013. Accordingly, the Court **RECOMMENDS** that the Defendant's motions [**Docs. 100, 104, and 123**] should be **DENIED**.[7]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[7]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).