UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
(at Knoxville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3: 13-10-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CLIFFORD LEON HOUSTON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of a number post-trial motions filed by Defendant Clifford Leon Houston. [Record Nos. 273, 274, 275] As explained below, each will be denied.

## I.

The factual and procedural history of this matter is lengthy and is set out in detail in several prior orders. In fact, many of the defendant's current arguments have been addressed in great detail – on multiple occasions – and found to be meritless. Nonetheless, the Court will again address the defendant's claims.

This case arises from an investigation of the defendant's brother, Rocky Houston. Agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF&E") commenced an investigation after receiving information that Rocky Houston, a convicted felon, was in possession of firearms. As part of the investigation, a video camera was

-1-

installed on a utility pole adjacent to the Houston family property. After weeks of monitoring the pole camera, law enforcement attained a search warrant authorizing its continued use. On January 11, 2013, ATF agents obtained search warrants for the defendant's residence (391 Barnard Narrows Road), Rocky Houston's primary residence (373 Barnard Narrows Road), and Rocky Houston's daughter's residence (412 Barnard Narrows Road). During the execution of these warrants, law enforcement encountered Defendant Clifford Houston. The events which transpired led to his arrest for being an unlawful user of a controlled substance in possession of firearms.

The defendant was subsequently taken into federal custody. On January 15, 2013, a federal grand jury returned an indictment charging him with a violation of 18 U.S.C. § 922(g)(3). [Record No. 6] In February 2013, while awaiting his trial on the initial charge, and while an inmate at the Blount County Detention Center, Houston made a recorded call on the jail telephone system to Pat Honeycutt. During the conversation, Houston repeatedly threatened to kill his former attorney, James F. Logan, Jr.

On May 7, 2013, the grand jury returned a superseding indictment adding a forfeiture allegation and Count Two which charged Houston with knowingly and willfully transmitting in interstate commerce a true threat to injure another person in violation of 18 U.S.C. § 875(c). [Record No. 92] The Court subsequently granted the defendant's motion to sever Count Two from Count One and the forfeiture allegation. [Record No. 135]

The defendant elected to proceed to trial on both counts without counsel. On November 19, 2013, a jury found the defendant guilty of violating 18 U.S.C. § 875(c). [*See*

Record Nos. 265, 266.] On December 3, 2013, Houston filed a number of post-trial motions, including motions: (i) for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure;[1] (ii) for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure; and (iii) to arrest judgment. [Record Nos. 273, 274, 275]

## II.

### A. Rule 29 — Motion for Judgment of Acquittal

A defendant may file a motion for a judgment of acquittal challenging the sufficiency of the evidence under Rule 29. Fed. R. Crim. P. 29(c). However, a motion for acquittal should be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (quotation marks and citations omitted) (emphasis in original); *see also United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). The Court has a limited latitude when addressing sufficiency of the evidence questions. Indeed, it is not permitted to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002) (citations omitted). In fact, reversal is appropriate only if the judgment is not supported by "substantial and competent evidence upon the record as a whole." *Gardner*, 488 F.3d at 710 (quotation marks and citations omitted). This standard places a very heavy burden upon a defendant challenging his jury

---

1      The defendant mistakenly cites to Rule 33 of the Federal Rules of Evidence. [Record No. 273]

verdict on insufficiency-of-evidence grounds. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).

## B.     Rule 33 — New Trial

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision of whether to grant a new trial is left to the "sound discretion of the district court." *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995)). Such a motion may be premised upon the argument that the jury's verdict was against the "manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). However, a Rule 33 motion based on the weight-of-the-evidence should be granted only in the "extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.* at 593. And unlike Rule 29 motions, the Court is permitted to "act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.*; *see also United States v. Montgomery*, 358 F. App'x. 622, 628 (6th Cir. 2009).

## C.     Rule 34 — Motion to Arrest the Judgment

Under Rule 34 a defendant may move to arrest the judgment if the indictment or information does not charge an offense or the Court does not have jurisdiction over the charged offense. Fed. R. Crim. P. 34. Therefore, any evidence adduced at trial is not relevant to a motion for arrest of judgment. *United States v. Kernell*, 742 F. Supp. 2d 904, 906 (E.D. Tenn. 2010) (citations omitted). Further, "[m]otions for this relief are rarely made,

-4-

and it is even rarer that they are granted." *United States v. Panyard*, No. 07-20037, 2009 U.S. Dist. LEXIS 771, at *8 (E.D. Mich. Jan. 7, 2009) (quotation marks and citations omitted).

## III.

As grounds for his post-trial motions, Houston regurgitates a number of arguments the Court has previously found to be baseless (*e.g.*, claims of alleged conflicts of interest of United States District Judge Thomas A. Varlan, United States Magistrate Judge C. Clifford Shirley, Jr., United States Attorney William C. Killian, Assistant United States Attorney David C. Jennings, the Clerk's office, and the undersigned; allegations of conspiracy and violations of "oaths of office). These claims fare no better following the jury verdict.

In addition to his numerous claims of alleged conflicts, Houston raises several other alleged errors. Specifically, he argues that the Court erred by: (i) refusing to instruct the jury the jury on the defense of duress and the possibility of a lesser included offense; (ii) failing to disqualify the jury pool due to an alleged conflict of interest with the Clerk of the Court Debra Poplin; (iii) denying him the assistance of elbow counsel and "by allowing [his] elbow counsel to withdraw on the morning of trial;" (iv) not giving him sufficient notice that he would be denied the assistance of elbow counsel; and (v) by "granting judgment to the government." Notably, the defendant does not elaborate in any manner beyond these cursory assertions and provides no legal authority to support his claims. Likewise, Houston does not attempt to explain how these claims would warrant the relief he seeks. More importantly, many of his assertions entirely misconstrue the record of this proceeding.

## A. Motion for a New Trial

### 1. Sufficiency of Evidence

The defendant argues that the Court erred by "granting judgment to the government . . . inasmuch as the verdict was against the weight of the evidence." [Record No. 273, p. 14] The defendant does not elaborate beyond this bare assertion. And, indeed, he cannot because the jury's verdict was more than sufficiently supported by evidence presented during trial.

To prove a violation of 18 U.S.C. § 875(c), the government was required to establish beyond a reasonable doubt that the defendant transmitted a communication in interstate commerce; the communication contained a true threat; and the threat was a threat to injure the person of another. At trial, a recording was played of a February 2013 telephone conversation in which Houston repeatedly threatened to kill his former attorney James F. Logan, Jr., and also stated his desire to have him killed by relatives. Cody Lindsey, a deputy at the Blount County Jail, testified that he was familiar with the defendant, that the defendant was an inmate at the jail on the date of the call, and that he was on duty that date. [Record No. 293, pp. 140-43] Lindsey testified that he overheard the defendant state that "when me and my brother get out, we are going to go into that law firm and kill every last one of them." [Record No. 293, pp. 142-43]

James F. Logan, Jr. testified regarding his prior relationship with the defendant as his attorney in an unrelated murder case in state court. [Record No. 293, pp. 144-46, 150-52] Logan testified about how he obtained an interest in the defendant's real property as part

-6-

of a fee arrangement with the defendant's father in connection with his prior representation. Logan identified the defendant's voice on the recorded telephone conversation. [*Id.*, pp. 147-50] This evidence, together with the actual recording, sufficiently supports the jury's determination that Houston made a "true threat" to injure the person of another and that these statements were made under circumstances that a reasonable person hearing the statements would understand them to be a serious expression of an intent to inflict injury. 18 U.S.C. § 875(c).

Trial testimony also established that the defendant's communication traveled in interstate commerce. Steve Juneau, the director of operations of City Tele Coin, Inc. ("CTC"), testified regarding the Blount County Jail's telephone system. CTC oversees the jail's telephone system (along with over two hundred other detention centers' telephone systems). Juneau testified that Blount County Jail's telephone system is computerized and that each inmate is provided an identifying pin number which he or she is required to enter at the beginning of each call. The inmate is also required to state his or her name. This information is then verified at CTC's monitoring location in Bossier City, Louisiana. If the information is properly verified and the inmate has adequate funds in his account, the call is routed to number originally dialed by the inmate. CTC's computers capture each telephone phone call, transforming them to wav. files. [Record No. 293, pp. 119-122] Thus, although the phone call was placed from Blount County, Tennessee, the communication traveled to CTC's monitoring location in Louisiana, where account information was verified, and then routed to Honeycutt in in Tennessee. This information

sufficiently supports the jury's conclusion that the defendant's telephone communication traveled in interstate commerce.

Blount County Investigator Lisa Hoard also testified regarding the jail's telephone system. [Record No. 293, pp. 106-09] Specifically, Hoard testified that she reviewed the wav. file of the defendant's February 2013 phone conversation and identified Houston as the caller. [*Id.*, pp. 108-13]

The evidence and testimony presented during trial provided the jury with a sufficient basis to conclude the defendant was guilty of the § 875(c) charge. The testimony of Juneau and Hoard support the jury's determination that the transmitted communication affected interstate commerce by crossing state lines. The recording of the defendant's telephone conversation in which he repeatedly threatened to kill Logan, along with the testimony of Lindsey, Hoard, and Logan support the jury's conclusions that the communication contained a true threat and that these were threats to injure the person of another. Thus, the evidence established each required element of a § 875(c) offense. Houston's assertions to the contrary are without merit. Moreover, there is no reason to conclude that the verdict was against the "manifest weight of the evidence." *Hughes*, 505 F.3d at 592. To the extent the defendant relies on an insufficiency-of-the-evidence argument in support of his Rule 29 and Rule 33 motions, his assertions fail.

### 2.     Jury Instructions

The defendant also argues that the Court erred in instructing the jury. Specifically, he claims that the Court mistakenly "refus[ed] to instruct the jury on the possibility or

potential of the defense of durress," as well "refusing to instruct the jury of a lesser included offense." [Record No. 273, p. 12] However, neither instruction was warranted and the defendant is not entitled to a new trial based on these claims.

As an initial matter, the parties were directed to file any proposed jury instructions for the trial of Count Two of the Superseding indictment no later than Friday, November 8, 2013. [Record No. 202, p. 4] The defendant did not file any instructions. Additionally, the Court provided both parties drafts of the final jury instructions prior to holding the instruction conference. The defendant never requested that either instruction be given to the jury. Thus, the defendant's claims that the Court "refused" to instruct the jury on these claims is false. Nonetheless, as noted above, the defendant was not entitled to either instruction. The Sixth Circuit has identified five factors regarding whether a jury instruction presenting a duress defense is appropriate. Evidence of each factor must be presented:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm[;] and (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994) (citation omitted).

The defendant provided no evidence regarding any of these elements. Therefore, the instruction was not warranted. However, the Court specifically instructed the jury regarding the defendant's state of mind. The jury was instructed that:

> Ordinarily, there is no way that a defendant's state of mind can be proved directly, because no one can read another person's mind and tell what that person is thinking.

> But a defendant's state of mind can be proved indirectly from the surrounding circumstances. This includes things like what the defendant said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.

> You may also consider the natural and probable results of any acts that the defendant knowingly did, and whether it is reasonable to conclude that the defendant intended those results. This, of course, is all for you to decide.

[Record No. 294, pp. 29-30] Thus, the defendant cannot claim that the jury was improperly instructed regarding his current claim of duress.

Next, the Court notes that there is no lesser included offense of a § 875(c) charge. The defendant either knowingly or willfully transmitted in interstate commerce a true threat to injure another person, or he did not. A lesser included offense instruction – even if it had been requested – would not have been warranted. In short, the Court neither refused nor erred in not instructing the jury concerning these two matters.

### 3.    Disqualification of Jury Pool

The defendant argues that the Court erred "by failing to disqualify the jury pool" that was "selected" by the Clerk of the Court Debra C. Poplin. [Record No. 273, p. 12] He argues that disqualification was necessary because his brother filed a civil lawsuit against

Poplin and other deputy clerks. Houston claims that, because of this lawsuit, Poplin and her office had a "clear potential for bias and prejudice against the defendant." [*Id.*] The defendant identifies the case as *Rocky Joe Houston v. Debra C. Poplin, et al.*, Civil Case No. 3: 13-216. This claim is essentially a restatement of one of his many alleged conflict-of-interest arguments which the Court has previously rejected.

As an initial matter, the case number provided by the defendant is incorrect and the Court is unable to locate any civil action in which the defendant's brother sued Poplin. Additionally, the fact that his brother may have sued numerous employees of the Court does not demonstrate bias or prejudice. Such claimed litigation has nothing to do with the defendant and does not warrant the "disqualification" of any members of the Clerks' office or the jury summonsed by that office as a ministerial matter. The jury pool in the Eastern District of Tennessee is selected at random from a fair cross-section of the community. The Clerk of the Court is not personally responsible for, nor involved in, bringing specific individual jurors to serve. Additionally, the defendant participated in the selection of the empaneled jurors and had no objections at the time. His current, belated attempt to challenge the selection process involving the Clerk of the Court is frivolous.

### 4. Denial of Counsel

The defendant also claims that the Court "erred by allowing [his] elbow counsel to withdraw on the morning of trial, therefore, denying [him] the right to have the assistance of elbow counsel for his defense as guaranteed by the Sixth Amendment." [Record No. 273, p. 14] Houston argues that he was not given sufficient notice that he would not have the

assistance of counsel. [*Id.*] The defendant's allegations entirely misrepresent the record of this matter.

Throughout the course of this proceeding, the defendant has filed numerous motions to substitute counsel and to re-appoint counsel. Each time, the Court addressed one of the defendant's motions, his right to self-representation, right to counsel, the perils of self-representation, and the role of elbow counsel were thoroughly explained to him, both during the hearings regarding his motions as well as through the Court's numerous orders. [*See* Record Nos. 36, 37, 38, 98, 99, 126, 135, 136, 194, 195, 221] At the outset of this criminal matter, the defendant was provided the assistance of court appointed attorney Joseph A. Fanduzz. [Record No. 8] However, on March 4, 2013, the defendant elected to represent himself. After advising the defendant of the risks and perils of self-representation in accordance with *United States v. McDowell*, 814 F.3d 245, 251 (6th Cir. 1987), and against the Court's advice, the defendant persisted in his insistence to proceed without an attorney. The Court granted the defendant's motion, but also appointed attorney Charles Poole to act as elbow counsel. [Record No. 37, 38]

On July 18, 2013, the Court granted the defendant's motion to sever Count Two of the Superseding Indictment for a separate trial, as well as his motion for the appointment of counsel on Count Two, appointing Poole to represent the defendant on Count Two, while also acting as elbow counsel on Count One. [*See* Record Nos. 135, 136] The

-12-

defendant eventually proceeded to trial on Count One, representing himself with Poole as elbow counsel.[2]

On November 14, 2013, four days prior to the start of this trial, Houston filed a "Notice of Change of Counsel," stating that he would be representing himself at trial. [Record No. 256] The Court addressed the defendant's notice the morning of trial and inquired whether the defendant still intended to waive his right to counsel and elect to represent himself. The defendant again reiterated his desire to proceed with self-representation. [Record No. 293, pp. 4-5] In light of the defendant's position, the Court more fully addressed the issue:

> The Court: Mr. Houston, I realize that you've gone through some of these issues with the Magistrate Judge previously regarding self-representation, but I want to go – I want to touch a couple of those matters again, if I could, please; and that is, I want to make sure that you do understand the consequences if you do proceed without counsel in the case.
>
> Houston: Yes, Sir.
>
> The Court: Of course, you have a right to do that, you have a right to proceed without counsel. In this particular matter, if you do decide to proceed without counsel, I am going to discharge Mr. Poole. He won't be assisting you in any way in this trial, so you will be on your own in the case, won't be standby or elbow counsel to assist you, and you need to understand that.
>
> Houston: Yes.

---

2    Poole's role as elbow counsel was repeatedly explained to the defendant. It was reiterated on numerous occasions that the defendant did not have a right to the assistance of elbow counsel, but that elbow counsel was to serve the purpose of relieving the undersigned from the need to explain and enforce basic Court rules, procedure, or decorum to the defendant. [*See, e.g.*, Record No. 221; *see also* Record No. 195]

[*Id.*, pp. 4-5]

The Court reviewed whether the defendant understood the government's pending motion *in limine* and the ramifications if that motion were to be granted, as well as the potential consequences of failing to abide by any of the Court's rulings. Additionally, the Court stated:

The Court:    Now, another matter I want to mention to you is that, of course, because you are incarcerated, you will continue to have limited access to legal materials. Now, I don't anticipate that this trial will take as long as the trial for Count One, but you need to understand that, of course, while you're incarcerated, you do have a limited access to legal materials.

Are you familiar with me so far? Do you understand all the matters that I've talked with you about so far?

Houston:    Yes, sir.

The Court:    And do you feel like you can abide by those restrictions in the case? Is that correct?

Houston:    Yes, sir.

[*Id.*, p. 7]

The Court also reviewed with the defendant the purpose of elbow counsel, explaining that the defendant did not have a right to such representation:

Houston:    [W]hy am I not allowed the assistance of counsel?

The Court:    Well, you have to make a decision to either represent yourself or to have an attorney represent you. Now, earlier, the Magistrate Judge appointed standby counsel for Count One, and I have made a determination that that is not necessary for Count Two if you choose to represent yourself, because essentially what you're attempting to do is have your cake and

-14-

eat it too.  You are trying to get hybrid representation, which I'm not going to allow if the case goes forward.  So you'll either have to have counsel to represent you or you're going to have to represent yourself.  So that's the decision that you have to make.

. . .

The Court:    I will make a finding that if you make that decision you are doing it knowingly and voluntarily and intelligently.  But, in the final analysis, it's a decision for you to make.

Houston:      In case there is a conviction, what about appeal purposes?  Am I not allowed –

The Court:    You could request to have an attorney appointed to represent you if there were to be an appeal.  You could make that request.  But it's your decision at this point as to whether you want to represent yourself during the trial on Count Two or whether you want to have Mr. Poole represent you.  It can't be half and half.

Houston:      Yes. I'll be representing myself.

The Court:    All right.  Very well.  Mr. Poole, you're excused at this time.

[*Id.*, pp. 7-9]  The Court then made a finding on the record that pursuant to *Faretta v. California*, 422 U.S. 806 (1974), the defendant made a knowing and voluntary decision to represent himself in this matter after having been advised of the disadvantages of self-representation, by not only the undersigned, but also on several occasions by the Magistrate Judge.  The defendant satisfactorily demonstrated that he understood the potential pitfalls and perils associated with self-representation.  [Record No. 293, pp. 9-11]

As set out above, the defendant's claims that he was "denied" counsel entirely misconstrue the record, but that is not unexpected from this defendant who has

-15-

demonstrated that proclivity throughout this criminal action. The Court granted his motion to proceed in this matter *pro se*. He was warned of the potential perils and pitfalls of self-representation. And even after the Court again informed him that, if he chose to proceed *pro se*, Poole would be excused, the defendant stated that he desired to represent himself. In short, the defendant knowingly and willfully waived his right to counsel on Count Two and elected to proceed without an attorney.

Moreover, as explained to the defendant on numerous prior occasions, he is not constitutionally entitled to elbow counsel while representing himself. *See United States v. Collins*, 129 F. App'x 213, 217 (6th Cir. 2005); *United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987) (holding that a defendant may either represent himself or, alternatively, be represented by counsel, but has no right to hybrid representation); *United States v. Lawrence*. Rather, elbow counsel is appointed at the Court's discretion. *See McKaskle v. Wiggins*, 465 U.S. 158, 176 (1984). Contrary to the defendant's claims, there is no constitutional right to the assistance of elbow counsel and his arguments on this point fail.

### 5. Alleged Conflicts of Interest

A good portion of the defendant's post-trial motions again consist of allegations of conflicts of interest of certain judges, court personnel, and the U.S. Attorney's office. He contends that these parties have an "interest in self-vindication, a personal stake in the matter, a loss of impartiality, in violation of their sworn oath and in conflict of interest." [*See, e.g.,* Record No. 273, pp. 1, 8; Record No. 274, pp. 1, 8.] The defendant, however, provides no evidence to support his claims. Instead, he continues to make only conclusory,

-16-

unsubstantiated allegations. Furthermore, the defendant's allegations concerning these issues have been repeatedly addressed and found to be without merit. [*See* Record Nos. 83, 88, 103, 115, 128, 142, 143, 153, 157, 163, 166, 182, 185, 188, 189, 210, 223, 231, 236, 237, 238, 259.] And they are still without merit. Therefore, the Court incorporates by reference the prior rulings regarding this issue.

To the extent an argument can be deciphered, the fact that his brother previously filed civil lawsuits naming various judges in this district, court personnel, and the U.S. Attorney and members of his office, does not demonstrate bias, self-interest, or a loss of impartiality. Additionally, the case which he contends was still pending (Civil Case No. 3: 13-216) was not filed by his brother and does not involve his brother or any member of his family.

The defendant also continues to claim that law enforcement officers tampered with and fabricated evidence and exceeded the scope of the search warrants which led to his original indictment. He also claims that members of the U.S. Attorney's office tampered with and fabricated evidence, stole unidentified property, and engaged in acts of vandalism. Houston claims that he and his brother erected large billboards on their property, criticizing various public officials, and claiming that certain judges and law enforcement personnel had violated various federal laws and engaged in treason and terrorism. The defendant argues that this criminal proceeding was initiated as a result of these billboards and in retaliation against the defendant for "reporting federal crimes." Next, Houston maintains that certain members of the U.S. Attorney's office, law enforcement, and members of the Court have

conspired against him to prevent him from exercising his First Amendment rights. Based on these allegations, Houston argues that his rights to due process and a fair trial have been substantially affected.

Again, Houston has not provided any evidence in support of these allegations. He does not identify what evidence was tampered with or fabricated and he does not identify any property that was stolen. The defendant provides no explanation or evidence of any type of a conspiracy beyond his self-created claim that one exists. The defendant was tried and convicted for threatening to kill his former attorney, not because the government sought to retaliate against him for exercising his First Amendment rights. The billboards and search of the Houston property are unrelated to the trial regarding the charge that he violated § 875(c).[3] Because of this, Houston's motion to sever the two substantive counts was granted. The Court was not required to disclose these irrelevant allegations to the jury and they do not demonstrate that Houston was prejudiced by their non-disclosure.

## B. Motion for Acquittal

Through this motion, the defendant again raises a number of baseless and unsupported allegations of conflicts of interest, conspiracies, and violations of various federal and state laws by government officials. And again, the defendant's claims are without

---

3   To the extent the defendant claims that certain of his billboards containing the photographs of the dead bodies of Roane County Sheriff's Deputy as well as another deceased individual were taken down during the execution of the search warrants of his property, AUSA Jennings stated during the trial of Count One that he was unaware that any of the photographs were taken down. Additionally, ATF Special Agent Jason Dobbs testified that he had no direct knowledge of what happened to the billboard or photos. Again, however, these photographs are entirely irrelevant to this case and the defendant's post-trial motions.

-18-

merit. The Court has repeatedly addressed the defendant's claims regarding allegations of certain conflicts of interest, acts of fraud, conspiracy, etc., and has found that they are entirely without merit.[4]

In support of his current motion for acquittal, the defendant argues that the government "never claimed" that the threat was communicated directly to Logan, his family, or staff; that his threat put Logan, his family, or staff in "any immediate danger or harm;" or that he had "any opportunity or means" to carry out the threat. [Record No. 274, pp. 10-11] This argument is of no consequence because a direct communication is not a required element of a claim under § 875(c) and the government was not required to offer proof of these "claims." *See United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997) (explicitly rejecting proposed standard that requires "some connection" between the individual who the threat is communicated to and the threatened individual); *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001) (specifically rejecting the defendant's argument that his statements to kill other students at his high school cannot, as a matter of law, constitute a true threat because they were made to a random third party who had no connection with his high school and was a stranger); *Alkhabaz*, 104 F.3d at 1495 (defining what constitutes a threat under § 875(c)) (holding that a defendant need not have the opportunity or means to carry out the threat and providing example that "one may communicate a bomb threat, even

---

4       At the close of the government's case-in-chief, as well as the close of all evidence, the Court denied the defendant's initial motion for acquittal as well as his renewed motion for acquittal. [Record No. 293, pp. 153-156; Record No. 294, pp. 3-4] The Court incorporates and adopts its findings and conclusions, as stated on the record, regarding its denial of the defendant's prior motions for acquittal.

if the bomb does not exist, for the sole purpose of creating a prank. However, such a communication would still constitute a threat because the threatening party is attempting to create levity (at least in his or her own mind) through the use of intimidation."); *United States v. DeAndino*, 958 F.2d 146, 148-50 (6th Cir. 1992).

The Court also notes that many of the defendant's threats were claims that he would kill Logan once he was released from prison. [*See* Government's Trial Exhibit 1, CD containing jail call; Government's Trial Exhibit 1A, Transcript of jail call.] For instance, during his conversation with Honeycutt in which he threatened Logan's life, the defendant stated:

| Houston: | When I get out, that motherf[-]'s [Logan's] got problems. |
|---|---|
| Honeycutt: | I also heard that he was over at the old white house. What's he – |
| Houston: | I'll kill that motherf[-] [Logan] when I get out. |
| Honeycutt: | Shhhhh. |
| Houston: | Hey, I ain't kidding. I ain't kidding. They can record it. They can do whatever the hell they want. That motherf[-] opens up my house, I'll kill his ass. |
| Honeycutt: | Hey. Hey. |
| Houston: | When I get out of this motherf[-], he's [Logan's] dead. |
| . . . | |
| Honeycutt: | Well, I can't figure out what he's doing down at your house. |

| Houston: | Oh, hey, hey, hey, hey, you tell any of my family, you tell Cody [the defendant's nephew], you tell Rachel [the defendant's niece], any of them, to kill that son-of-a-bitch. To shoot him, on sight. When he lands on my property, any of my family, any of my people has got my permission to kill that son-of-a-bitch. |
|---|---|
| Honeycutt: | They ain't gonna do that. I mean, they ain't gonna shoot nobody. |
| Houston: | Well I ain't got no damn problem with it. I ain't got no damn problem with it. You let me get out of here. You let me get out. You let me, hey. |

[Government's Trial Exhibit 1, CD containing jail call] Much of the fifteen minute conversation between the defendant and Honeycutt continued on in this manner. Although the defendant claims he did not have the "means or opportunity" to carry out his threats, he continually stated his intention to carry out these threats once released from prison, as well as requested that other individuals kill or injure Logan.

The jury's verdict was supported by evidence. The defendant transmitted a communication that affected interstate commerce by crossing state lines from Tennessee to Louisiana and back to Tennessee, *via* telephone, which contained a true threat to injure the person of another — Logan. Whether the threat was made directly to Logan, his family, or staff, or put these individuals in "any immediate danger or harm," or whether the defendant had an opportunity to carry out the threat is immaterial to proving that the defendant was guilty of violating § 875(c). Thus, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mackey*, 265 F.3d at 460.

## C.       Motion to Arrest Judgment — Lack of Jurisdiction

Houston contends that the Court must arrest judgment because it is without jurisdiction over the charged offense.  [Record No. 275; *see also* Record No. 273, p. 14]  In support, he again re-states claims of alleged conflicts of interest, all of which have been argued and addressed by the Court on numerous occasions.  The defendant argues, that because Judge Varlan allegedly suffers from a conflict of interest, he was unable to properly reassign this matter to the undersigned.  The defendant asserts that the Court, therefore, is without proper jurisdiction over this matter.  Again, these allegations are without merit.

As grounds for his claims that the Court lacks jurisdiction over this matter, the defendant generally cites "conflicts of interest."   He also argues that, because his brother previously filed a civil right action against Judge Varlan, and because Judge Varlan recused from unrelated civil lawsuits filed by the defendant's brother on prior occasions, Judge Varlan has acknowledged that is biased against the defendant.  Houston contends that Judge Varlan presided over the early stages of this criminal matter while under a conflict of interest.  Relying on *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983), he contends that, because of the alleged conflict, Judge Varlan was unable to properly reassign this case to the undersigned.

The facts of *McCuin* are inapposite to those presented by this case.  In *McCuin*, the district judge was required to disqualify himself because his brother-in-law was an attorney representing one of the parties.  *Id.* at 1260 (citing 28 U.S.C. § 455(b)(5)(ii)).  Realizing that disqualification was required under § 455(b)(5)(ii), the district judge reassigned the case to

another judge in the district. On appeal, the Fifth Circuit, indicated that because the district judge was disqualified from the proceeding, he could not properly preside over the matter in any way, including participating in the reassignment of the case to another judge. *Id.* at 1261. The case was remanded with orders to that the matter should be "reallotted in accordance with local practice." *Id.*

Here, unlike *McCuin*, Judge Varlan was disqualification neither occurred nor was required. Contrary to the defendant's arguments, recusal is not required just because one of the parties has initiated litigation against the presiding judge. *Callihan v. Eastern Ky. Prod. Credit Ass'n*, No. 89-5578, 1990 WL 12186, at *2 (6th Cir. Feb. 13, 1990); *In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005). Additionally, a judge's recusal in one case does not automatically require his disqualification in a subsequent case. *Communities for Equity v. Mich High School Athletic Ass'n*, 459 F.3d 676, 698 (6th Cir. 2006); *Clifford Leon Houston v. Wicks*, No. 11-6557, 2012 WL 5259166 (6th Cir. Oct. 25, 2012). Moreover, the prior lawsuits which the defendant references were neither filed by the defendant nor involved him. The defendant has again failed to demonstrate any extrajudicial source of bias or offer any evidence of partiality or of a conflict of interest that would reasonably draw into question the ability of Judge Varlan to preside over this matter or to reassign this case. *See* 28 U.S.C. § 455.

Finally, the determination to reassign this matter was entirely independent of any alleged of conflict of interest. This case was reassigned to the undersigned to assist in expediting disposition of the volume of cases now pending in the Eastern District of Tennessee. Reassignment of this matter does not demonstrate bias towards the defendant

and does not substantiate the defendant's vague and general assertions of conflicts of interest. The defendant has failed to properly raise an issue of judicial bias or conflict of interest that would reasonably draw into question the Court's impartiality and it cannot be asserted in good faith that reassignment of this matter to the undersigned constitutes grounds for disqualification or that this Court lacks jurisdiction over this matter.

**IV.**

For the reasons outlined above, it is hereby **ORDERED** as follows:

1.    Defendant Clifford Leon Houston's Motion for a New Trial [Record No. 273] is **DENIED**.

2.    Defendant Clifford Leon Houston's Motion for Acquittal [Record No. 274] is **DENIED**.

3.    Defendant Clifford Leon Houston's Motion to Arrest Judgment [Record No. 275] is **DENIED**.

4.    To the extent Defendant Clifford Leon Houston requests the Court to schedule hearings regarding these claims, his request is **DENIED**.

This 3rd day of March, 2014.



Signed By:
*Danny C. Reeves*
**United States District Judge**