UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:13-CR-10 |
| v. | ) | |
| | ) | (REEVES / SHIRLEY) |
| CLIFFORD LEON HOUSTON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case came before the Court on October 15, 2015, for a motion hearing on Mr. Houston's Motion to Recuse Assistant United States Attorney David Jennings [Doc. 334] and Mr. Houston's Motion to Preclude Evidence: Testimony of Cody Linds[e]y [Doc. 335],[1] both filed on October 4, 2015. See 28 U.S.C. § 636(b). Assistant United States Attorney David C. Jennings appeared on behalf of the Government. Attorney Mike Whalen appeared with the Defendant, who was also present. After careful review of the motions, responses, arguments, and relevant law, the Court finds that the Defendant's motions should be denied.

**I.  MOTION TO RECUSE AUSA JENNINGS**

The Defendant moves the Court to recuse AUSA Jennings because he contends that Mr. Jennings is obsessed with the Defendant's guilt in the shooting of a Roane County officer and his ride-along volunteer ("the Roane County shootings"), despite the Defendant's acquittal of these crimes by two juries. The Defendant argues that Mr. Jennings' obsession violates the American Bar Association's ethical standards for prosecutors, who are not to have

---

[1] The trial transcript indicates that the correct spelling of this witness's name is "Lindsey." [Trans., Doc. 293, p.124]

any political, financial, business, property, or personal interest that would affect his or her professional judgment in a case. The Defendant maintains that AUSA Jennings has a personal interest in this case stemming from his deeply held animosity toward the Defendant.

The Government responds [Doc. 336] that the Defendant has failed to present any legitimate basis for recusal of AUSA Jennings. It states that it will retry this case in accordance with the requirements of the Court of Appeals for the Sixth Circuit's appellate opinion and that Mr. Jennings' beliefs about the Defendant's guilt or innocence of the Roane County shootings have no bearing upon this trial. The Government contends that it will not present any evidence of the Roane County shootings to the jury in this trial. However, it maintains that if the Defendant is again convicted, it will advise the District Judge at sentencing about the Roane County shootings because they bear upon the Defendant's characteristics and danger to the community.

At the October 15 hearing, Mr. Whalen advanced another example, which he claims reveals AUSA Jennings' personal interest in the Defendant's conviction. He argued that Mr. Jennings did not object when District Judge Danny Reeves dismissed the Defendant's elbow counsel before the trial of the Defendant's 18 U.S.C. § 875(c) charge ("the threat charge"). Mr. Whalen contended that Jennings' failure to object reveals that he sought an unfair advantage over the Defendant, who represented himself without the guidance of elbow counsel. Mr. Whalen also argued that AUSA Jennings' argument at sentencing about the Defendant's involvement in the Roane County shootings resulted in a sentence that was triple the higher end of the Defendant's guideline range. He stated that Mr. Jennings' focus on the Roane County shootings, despite the Defendant's two-time acquittal in state court, demonstrates that Mr. Jennings has a personal issue with the Houston brothers that he has allowed to color his judgment in this case.

Mr. Whalen stated that he raised this sentencing issue on appeal but that the appellate court remanded on the jury instruction issue and did not address the sentencing issue.

AUSA Jennings argued that although he had reviewed the evidence in the Roane County shootings and believed that it supported a conviction, the instant prosecution was not driven by his belief regarding the Defendant's guilt in these murder cases. He stated that it is his duty to be zealous at sentencing and to present evidence that shows the Defendant to be a dangerous man. He stated that he planned to present the same evidence in the instant retrial that he did in the first trial on the threat charge.

Typically, the Court does not look to the motivations of the individual prosecutor for prosecuting a particular defendant when a grand jury has returned a valid indictment. In other words, the grand jury—a group of independent citizens looking at the evidence—stands as the defendant's protection against a zealous, or potentially overly zealous, prosecutor. Moreover, a prosecutor's firm belief in a defendant's guilt seems appropriate in a case that proceeds to trial. See Marshall v. Jerrico, Inc., 446 U.S. 238, 248 (1980) (observing that "[p]rosecutors need not be entirely 'neutral and detached'"). In fact, the converse situation—an assistant United States attorney prosecuting a defendant whom he or she believes to be innocent—would seem to be the more sinister possibility. However, certain personal interest in the outcome of an investigation or prosecution can serve to disqualify a prosecutor:

> The Attorney General shall promulgate rules and regulations which require the disqualification of any officer or employee of the Department of Justice, including a United States attorney or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, or the appearance thereof. . . . .

28 U.S.C. § 528. A common type of personal interest that can create a conflict of interest for a prosecutor stems from the prosecutor's prior representation of a defendant, witness, or victim. See, e.g., Goff v. Bagley, 601 F.3d 445, 463 n.7 (6th Cir. 2010) (determining that prosecutors who previously served as defendant's guardians ad litem did not have a conflict of interest because they learned no information while representing the defendant that they could have used against him); United States v. Brooks, 41 F. App'x 718, 722 (6th Cir. 2002) (holding that prosecutor not disqualified despite prior employment in federal defender's office while it represented the defendant on an unrelated charge).

"[T]raditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which the enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law." Marshall, 446 U.S. at 249. It is the duty of the prosecutor to seek the truth, rather than to pursue a conviction doggedly:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88 (1935). In this respect, the Court must examine whether the prosecutor's alleged "obsession" caused him to pursue improper methods to achieve Defendant Houston's conviction. See United States v. Gotti, 782 F. Supp. 737, 745-46 (E.D.N.Y. 1992) (rejecting the defendant's argument that the prosecutor should be disqualified

4

from a subsequent trial due to the prosecutor's alleged "intense personal interest" in the defendant's prosecution and conviction).

In the instant case, the Defendant argues that AUSA Jennings has a personal conflict of interest because, according to the Defendant, Mr. Jennings is obsessed with his belief that the Defendant is guilty of two murders of which the Defendant was acquitted. The implication of the Defendant's argument is that Mr. Jennings would go to any length, even to the extent of using improper methods, to gain the Defendant's conviction in the instant case. In support of this, the Defendant points to Mr. Jennings' arguments at his sentencing hearing and to Mr. Jennings' failure to object to District Judge Danny Reeves' dismissal of Defendant's elbow counsel Charles Poole. The Court finds that whatever Mr. Jennings' beliefs about the Defendant's guilt with regard to the Roane County shootings, it does not find that Mr. Jennings acted improperly to gain the Defendant's conviction in the first trial of the threat count.

First, Mr. Jennings' reference to the Roane County shootings at sentencing has no bearing upon the fairness of the Defendant's conviction. Mr. Jennings stated that the Government did not bring up the Roane County shootings in the first trial on the threat charge, nor does it plan to reference those shootings in the retrial.[2] Whether the Defendant's involvement in the Roane County shootings is properly considered in determining the Defendant's sentence is both hypothetical at this point and also a matter for the District Judge to determine if the Defendant is convicted again. In any event, the Court does not find that Mr. Jennings argument on the Roane County shootings at sentencing reveals that he used improper methods to gain the conviction for which Defendant Houston was sentenced. Mr. Jennings has

---

[2] In fact, before the trial of the threat charge, the Government filed a motion *in limine* [Doc. 255] asking the Court to order the Defendant from referring to irrelevant and extraneous evidence and/or comments, including any reference to the Roane County shootings. This motion was granted [see Trans., Doc. 293, p.18].

5

Case 3:13-cr-00010-PLR-CCS   Document 341   Filed 10/26/15   Page 5 of 14   PageID #: 3169

legitimate arguments, based upon the law and the sentencing guidelines, for the relevance of the Roane County shootings to the Defendant's sentence. Defense counsel has legitimate arguments for why the Roane County shootings are irrelevant. If following the retrial of this case, a sentencing hearing is held, counsel may make these arguments to the District Judge. Thus, the Court agrees with the Government that Mr. Jennings' belief that the Defendant's actions in the Roane County shootings are relevant at sentencing has no bearing upon whether he should be disqualified from prosecuting the Defendant.

Second, the Court finds that the question of whether Mr. Jennings should have objected to the District Judge's dismissal of Mr. Poole, the Defendant's elbow counsel, is somewhat academic, because the Sixth Circuit has remanded this case for retrial of the threat charge and the Defendant has counsel for the coming retrial. Nevertheless, the Court finds that the events surrounding the dismissal of Mr. Poole do not suggest that Mr. Jennings was seeking an improper advantage over the Defendant in the first trial. Resolution of this issue requires a brief review of the history of the Defendant's representation in this case.

The Defendant's representation in the two trials arising out of the Superseding Indictment has a long and rocky history. The Court initially appointed [Doc. 4] Attorney Joseph Fanduzz to represent the Defendant. The Defendant subsequently sought and was permitted [Docs. 37 & 38] to represent himself, with the assistance of different elbow counsel, Attorney Charles Poole. When the Defendant was charged with a second count, in the Superseding Indictment, he sought to represent himself on Count One and have counsel appointed to represent him on Count Two. The Court denied [Doc. 99] this request, holding that the Defendant must either represent himself with regard to the entire case or be represented with regard to the entire case. The Defendant chose the former option, and Mr. Poole remained on the

case as elbow counsel. The Defendant moved [Doc. 93] to dismiss or substitute Mr. Poole, but withdrew [see Doc. 99] this motion.

On July 18, 2013, the undersigned ruled [Doc. 135] that the two counts of the Superseding Indictment were improperly joined and should be severed for separate trials. At that time, the Court granted the Defendant's request for counsel to represent him in the separate trial of the 18 U.S.C. § 875(c) charge. The Court appointed Mr. Poole to represent the Defendant in this second trial, as he was already familiar with the case. On September 6, 2013, the Court denied [Doc. 195] the Defendant's request for substitution of Mr. Poole, finding no basis for the substitution of counsel. On October 18, 2013, the Court again denied [Doc. 221] the Defendant's request for substitution of Mr. Poole in his capacity as elbow counsel, concluding that elbow counsel served at the Court's discretion, rather than the Defendant's; that Mr. Houston was under no obligation to use Mr. Poole's assistance; and that Mr. Poole would continue to serve as elbow counsel on Count One in the event that termination of self-representation became necessary. On November 4 through 6, 2013, Defendant Houston represented himself in the trial of Count One, with Mr. Poole serving as elbow counsel. The jury acquitted [Doc. 246] the Defendant of Count One, being an unlawful user of a controlled substance in possession of a firearm.

On November 14, 2013, four days before the start of the trial on the threat charge, the Defendant filed a Notice [Doc. 256] that he would be representing himself at that trial. District Judge Danny Reeves addressed this Notice on the first day of trial, informing the Defendant that if he decided to represent himself, the Court would discharge Mr. Poole. [Doc. 293, p.4-5] The Defendant asked why he was not allowed the assistance of counsel. [Doc. 293, p.7] District Judge Reeves responded that the Defendant must make a decision to either

represent himself or to have an attorney represent him and that the Court had determined that standby counsel is not necessary in the trial of Count Two, if the Defendant chose to represent himself. [Doc. 293, pp.7-8] Judge Reeves stated that the Defendant was seeking hybrid representation, which the Court was not going to allow. [Doc. 293, p.8] In response to additional questions by the Defendant, Judge Reeves stated that the Defendant could request the appointment of counsel for an appeal, but that "it's your decision at this point as to whether you want to represent yourself during the trial on Count Two or whether you want to have Mr. Poole represent you. It can't be half and half." [Doc. 293, p.9] The Defendant stated that he wanted to represent himself, and Judge Reeves excused Mr. Poole and found that the defendant had knowingly and voluntarily made this decision. [Doc. 293, p.9] On December 23, 2013, the Defendant moved [Doc. 288] for the appointment of counsel for sentencing and post-trial motions. On January 27, 2014, the undersigned granted [Doc. 296] this motion and appointed current defense counsel to represent the Defendant.

While it is true that Mr. Jennings did not object to the District Judge's ruling that the Defendant could not have elbow counsel, if he chose to represent himself, the Court finds that the Defendant essentially objected to this determination and the District Judge explained the reason for his ruling. The Court observes that a defendant is not constitutionally entitled to elbow counsel while representing himself. See United States v. Collins, 129 F. App'x 213, 217 (6th Cir. 2005) (concluding that "when a defendant asserts his right to self-representation, he necessarily waives his right to counsel"); United States v. Mosely, 810 F.2d 93, 97 (6th Cir. 1987) (observing that a defendant may either represent himself or, alternatively, be represented by counsel, but has no right to hybrid representation). Instead, elbow counsel is appointed at the court's discretion. See McKaskle v. Wiggins, 465 U.S. 158, 176 (1984) (observing that the court

may appoint elbow counsel over the defendant's objection). While the undersigned finds that the appointment of elbow counsel to assist a *pro se* defendant is generally preferable because elbow counsel assists both the defendant and the court, such appointment is not required. The Defendant knew that if he chose to represent himself, he would not have the assistance of Mr. Poole. The Court finds that Mr. Jennings failure to object does not reveal that he gained, or even sought to gain, an improper advantage over the Defendant.

The Court finds no basis to disqualify Mr. Jennings from participating in the retrial of the threat charge. Not only did Mr. Jennings not seek to litigate the Roane County shootings at the trial of the threat charge, he expressly sought to preclude any reference to the Roane County shootings at that trial. Regardless of what AUSA Jennings thinks about the Defendant's role in the Roane County shootings, the Court finds that the Defendant has failed to show that he has any inappropriate personal interest in this case. Mr. Houston's Motion to Recuse Assistant United States Attorney David Jennings [**Doc. 334**] is **DENIED**.

## II. EXCLUSION OF TESTIMONY OF CODY LINDSEY

Pursuant to Federal Rules of Evidence 403 and 404(b), the Defendant also moves [Doc. 335] the Court to exclude the testimony of Blount County Sheriff's employee Cody Lindsey because it is irrelevant, unfairly prejudicial, and invites the jury to decide that the defendant is guilty in conformity with a character trait. The Government opposes [Doc. 337] the exclusion of Lindsey's testimony, arguing (1) the admissibility of this testimony was already determined in the first trial of the threat charge and, therefore, constitutes the law of the case and (2) it comes within an exception to Rule 404(b).

In the first trial of the threat charge, the Government called Blount County Sheriff's employee Cody Lindsey, who was a jailer at the jail where the Defendant was detained pending his trial on the Indictment. [Doc. 293, p.124] Jailer Lindsey testified that on February 9, 2013, the day before the alleged telephonic threat in this case, he overheard[3] the Defendant, whom Lindsey characterized as being in a rage, make comments about going to a law firm and killing everyone there. [Doc. 293, pp. 124, 126-27] The Government filed a Notice of Intent to Use Rule 404(b) Evidence [Doc. 250] with regard to this testimony. District Judge Danny Reeves conducted a hearing outside the presence of the jury and permitted both parties to question Jailer Lindsay to determine whether his testimony was precluded by Rule 404(b). Judge Reeves found that Jailer Lindsey's testimony was admissible without a limiting instruction. [Doc. 293, p.130] Judge Reeves determined that Lindsey's testimony was relevant to whether the Defendant made an intentional threat and to demonstrate that the telephonic threat was not just "an off-hand or flippant comment[.]" [Id.]

The Court looks first to whether the parties are bound by Judge Danny Reeves' ruling on the admissibility of this evidence in the retrial because it is the law of the case. "Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994). The Court is also bound by the mandate of the appellate court. Id. (observing that the "the mandate rule, requires lower courts to adhere to the commands of a superior court"). "The law of the case doctrine and the mandate rule generally preclude a lower court from

---

[3] Officer Lindsay testified that he overheard the Defendant by monitoring him on the intercom system that allowed him to listen to the Defendant's cell from the control room. [Doc. 293, p.125] The Defendant contends that Officer Lindsay violated his privacy interest in speaking to himself while locked in a small room. The Defendant presented no evidence on the context of his statements on February 9, 2013—whether he was in an open cell, who else was in the cell, whether the Defendant knew that jailers had the ability to listen to his conversations, etc. Thus, the Court declines to take up any "privacy interest" argument.

reconsidering an issue expressly or impliedly decided by a superior court." Id. "[T]he law of the case doctrine dictates that issues, once decided, should be reopened only in limited circumstances, e.g., where there is 'substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice.'" Id. (quoting Petition of United States Steel Corp., 479 F.2d 489, 494 (6th Cir. 1973)). However, our appellate court has recognized that the law of the case doctrine does not bind a trial court to the evidentiary rulings previously made in the case because such decisions "turn[] upon the evidence as developed during the course of a trial." United States v. Todd, 920 F.2d 399, 403 (6th Cir. 1990); United States v. McMichael, 525 F. App'x 388, 391 (6th Cir. 2013) (quoting Todd). "Rigorously applying the law-of-the-case doctrine would undercut the broad discretion that traditionally has been accorded a trial court in [evidentiary] matters." Todd, 920 F.2d at 403. Thus, the Court finds that, even though the Government does not intend to offer substantially different evidence with regard to Jailer Lindsey's testimony, the District Judge may again assess the admissibility of Jailer Lindsey's testimony at the retrial.

The Court also finds that revisiting the admissibility of Jailer Lindsey's testimony does not violate the mandate rule. The Sixth Circuit "reverse[d] Houston's conviction and remand[ed] the case for further proceedings." [Doc. 320, p.10] It did not discuss the admissibility of Lindsey's testimony, but only ruled on the propriety of the jury instructions. Thus, the Court may determine the admissibility of Lindsey's testimony without running afoul of the mandate rule.

Next the Court turns to the question of the admissibility of Jailer Lindsey's testimony under Rules 403 and 404(b) of the Federal Rules of Evidence. Rule 404(b)(1)

11

provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, exceptions to this rule exist, which permit the admission of evidence that would ordinarily be excluded by rule 404(b)(1): "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Government argues that the Defendant's intent is an element of the crime and remains an issue in the retrial. It contends that Jailer Lindsey's testimony shows the Defendant's mental state the day before he made the threat, with which he is charged. The Defendant argues that this evidence is prohibited by Rule 404(b)(1) and does not fall within one of the exceptions of Rule 404(b)(2). He contends that the fact that the Defendant was upset on February 9 does not show his intent during a telephone call on the following day.

The Defendant is charged with a violation of 18 U.S.C. § 875(c), which states "[w]hoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." As our appellate court discussed, United States v. Houston, 792 F.3d 663, 667 (6th Cir. 2015), the Supreme Court in United States v. Elonis, determined that assessment of a violation of section 875(c) could not turn on a negligence standard. 135 S. Ct. 2001, 2011 (2015). Instead, "the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." Id. at 2012 (also observing that a mental state of recklessness could potentially suffice). Thus, the Government must prove that the Defendant intended or, at least, knew that the February 10 telephone call would be viewed as

12

a threat.  The fact that the Defendant stated in his jail cell the day before the crime alleged that when he got out of jail, he would go to "that law firm" and kill them all makes it more likely that he intended the February 10 telephone call as a true threat, rather than that he was merely venting.  The Court finds that Lindsey's testimony is admissible under Rule 404(b)(2) to show the Defendant's intent and the absence of mistake.

Even though Jailer Lindsey's testimony is admissible under Rule 404(b)(2), it can still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The Defendant argues that Lindsey's testimony will confuse the jury, which could be misled about which threat—the one on February 9 or the one on February 10—they are evaluating.  The Court finds that the jury is capable of separating the Defendant's statements on February 9 from his statements on February 10.  Moreover, the undersigned determines that admission of his statements the previous day will not unfairly prejudice the Defendant.  Although Judge Danny Reeves found that no limiting instruction was necessary with regard to Lindsey's testimony, the Court observes that an instruction to the jury that it should consider the testimony with regard to the Defendant's statements on February 9, 2013, only as to the Defendant's intent during the telephone call on February 10, would help insure that this evidence is properly considered.  The Defendant may ask District Judge Pamela Reeves for such an instruction at the retrial, if he so chooses.

Accordingly, the Court finds that Jailer Lindsey's testimony is admissible under Rule 404(b)(2) and should not be excluded under Rule 403.  However, the Court also finds that evidentiary questions are best determined within the context of the trial.  Thus, the Defendant is free to challenge Lindsey's testimony before the District Judge at trial.  Mr. Houston's Motion to

13

Preclude Evidence: Testimony of Cody Linds[e]y [**Doc. 335**] is **DENIED** without prejudice to raise the issue again at the retrial of this matter.

Accordingly, it is ORDERED:

(1) Mr. Houston's Motion to Recuse Assistant United States Attorney David Jennings [**Doc. 334**] is **DENIED**, and

(2) Mr. Houston's Motion to Preclude Evidence: Testimony of Cody Linds[e]y [**Doc. 335**] is **DENIED** without prejudice to raise the issue again at the retrial of this matter.

**IT IS SO ORDERED**.

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge